**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David BACA, Defendant-Appellant.**

**No. 72-1838.**

United States Court of Appeals,
Tenth Circuit.

June 13, 1973.

Rehearing Denied July 10, 1973.

**200**

Don J. Svet, Asst. U. S. Atty., (Victor R. Ortega, U. S. Atty., on the brief), for plaintiff-appellee.

Louis G. Stewart, Jr., Albuquerque, N. M., for defendant-appellant.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

An indictment was returned in the United States District Court for the District of New Mexico, charging that David Baca, hereinafter called the defendant, "did possess" on July 13, 1972, "with intent to distribute a quantity of heroin, a schedule I narcotic drug controlled substance" in violation of 21 U. S.C.A. § 841(a)(1).

The sole ground urged as error was the overruling of a motion to suppress "all physical and testimonial evidence seized from Defendant on or about July 13, 1972," on the ground that it was seized under an illegal search warrant issued on July 12, 1972, on an affidavit sworn to by Detectives C. Brown, J. Parra, and A. Cordova, and by an unlawful search.

The parts of the affidavit here material are set out in Note 1 hereto.[1]

1. "The undersigned, being duly sworn, on his oath, states that he has reason to believe that on the person of DAVID BACA

AND JUAN BACA; on the premises described as follows: The house designated as 1927½ which is located in the alley

The search warrant was issued on July 12, 1972. The pertinent parts thereof are set out in Note 2 hereto.[2]

It will be noted that the search warrant says first, "on the person of" David Baca and Juan Baca; and second, "and on the premises described as The house designated 1927½" and does not state "on the person of David Baca and Juan Baca" at such house "Heroin in an unknown quantity and Marijuana in an unknown quantity * * *." We mention this, because of the contention made that the search of the person was limited to the house designated as 1927½.

It will further be observed that at no place in the affidavit or search warrant is the residence at 1927½ stated to be or referred to as the home of the defendant. Rather, it is described as the place where the defendant and Juan Baca carried on their alleged business as dealers and distributors of narcotics, and in nowise limited the possession of narcotics on their persons to that particular place.

It will further be observed that the affidavit described David Baca by his correct name. He was well known, and that was a sufficient description of him for the officers to recognize the individual, the person of whom they were authorized to search.

It will be further observed that the search warrant recited three places of concealment; one on the person of the defendant; one on the person of Juan Baca; and one at the house designated

---

between Second and Third Street, SW.
* * *
in said County and State there is now being concealed certain property, namely:
HEROIN in an unknown quantity
Marijuana in an unknown quantity
which have been used in the commission or which constitute evidence in the offense of Unlawful Possession of Heroin and the Unlawful Possession of Marijuana.
and that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: That within the past 24 hours a reliable confidential informant who has given officers information in the past, which has resulted in the arrest of persons involved in the Sale of Narcotics and Possession of Narcotics, called and advised that the above subjects were selling narcotics from the residence at 1927½ in the alley between Second and Third Street, SW and that he personally observed narcotics, to wit: heroin inside of said residence and on the persons of David and Juan Baca. The confidential informant advised that he has personally observed subject Juan and David Baca selling narcotics and distributing same to other persons to sell for them. The confidential informant advised that Pablo Sedillo, Juan Chavez, Orlando Sanchez, and Herman Padilla, as well as other known narcotic users have been selling narcotics for subjects David and Juan Baca. Officers of the Albuquerque Metro Squad have maintained surveillance on said residence for approximately one month and have observed the above subjects frequenting said residence on numerous occasions. During this past few months officers of the Albuquerque Metro Squad have received numerous complaints regarding the heavy flow of traffic coming and going from the residence at 1927½ between Second and Third Street, SW and narcotic addicts have been stopped and found to have numerous needlemarks on their arms. The subjects on each occasion advised that they had been to the residence at 1927½ where they had purchased Heroin from subjects Juan and David Baca. * * * "

2. "Proof by sworn written statement having been submitted to me by Detective C. Brown, J. Parra, and A. Cordova who (x) has reason to believe * * * that (x) on the person of DAVID BACA AND JUAN BACA AND (X) on the premises described as The house designated as 1927½, which is located in the alley between Second and Third, SW. * * * in BERNALILLO County, State of New Mexico, there is now being concealed certain property, namely: Heroin in an unknown quantity and Marijuana in an unknown quantity which have been used in the commission or which constitute evidence in the offense of Unlawful Possession of Heroin and the Unlawful Possession of Marijuana and as I am satisfied from said sworn written statement, a copy of which is attached hereto and by reference made a part hereof, that there is probable cause to believe that the property so described is being concealed on the (x) person, (x) premises described above and that grounds for the issuance of the Search Warrant exist, * * * ."

as 1927½. It in nowise expressly or impliedly required that the search of the persons take place at the house designated as 1927½.

On July 13, 1972, Cody Prestwood was employed as a Detective in the Sheriff's Department of Bernalillo County, New Mexico. Edward Tanuz was a Detective in the Police Department of Albuquerque, New Mexico, and A. C. Rodriguez was a State Policeman. On that day, they were engaged in the execution of such search warrant. Tanuz had physical possession of the warrant. On that day, Prestwood observed the defendant running from a point where a Dodge automobile was parked to a house numbered 1927 Second Street. The Dodge was parked on the premises where such house was located. Prestwood immediately advised his fellow officers that he had observed the defendant running from such point to such house. Prestwood had been acquainted with the defendant for at least four years and had no difficulty in recognizing him. The officers proceeded to the house and knocked on the door. Jeanette Baca responded to the knocking and opened the door. She was reputed to be the defendant's wife. The officers advised her that they had a search warrant for the person of David Baca. She denied that he was in the house. Prestwood told her he saw David Baca enter the house. She refused permission for the officers to enter the house. After considerable discussion and the exercise of much patience, because she was pregnant and they did not want to unduly excite her, the officers entered through the open door without her consent.

Prestwood knew the plan of the inside of the house, and immediately went to the nearest bedroom. He observed the defendant on the bed, with a sheet covering only a small portion of his body, and that he was dressed in shorts and a white T-shirt. He had observed that the defendant wore a white T-shirt when he ran from the point near the automobile to the house.

There were two mattresses on the bed. As Prestwood entered the bedroom, the defendant made a quick motion to insert his left hand between the mattresses. Prestwood grabbed the defendant's left hand, told him he was a police officer and that he had a warrant to search his person, and directed him not to move. Rodriguez, who was close behind Prestwood, entered the room and assisted Prestwood in preventing the defendant from inserting his left hand between the two mattresses. Prestwood grabbed his hand, because he had knowledge of the caliber of person the defendant was, and because he feared the defendant was reaching for a weapon or other means of doing him bodily harm.

Prestwood lifted up the top mattress. On the bottom mattress he observed a .22 caliber six-shot repeating revolver. In it were four loaded cartridges and two empty shells. The revolver was near the edge of the bottom mattress, close to the point where Baca was about to insert his hand, and close to the revolver was a cellophane bag containing 14 plastic packets, which the officers reasonably believed to contain heroin. Prestwood's testimony as to where the revolver and bag of plastic packets were located was not denied.

The officers seized the revolver and bag of plastic packets, placed identifying marks on them, and identified them at the trial. They were introduced into evidence at the trial, and it was established that heroin was contained in the plastic packets.

After seizing the revolver and the bag of plastic packets, the officers searched the defendant, but found nothing incriminating immediately on his person. It plainly appears from Prestwood's evidence that the gun and the bag of plastic packets, while they were between the two mattresses, were within the immediate reach and control of the defendant.

Defendant contends that the affidavit was insufficient to support a finding of probable cause for the search of the defendant's person, because it was based

on information furnished by unnamed informers.

■ Information obtained by the maker of an affidavit for a search warrant from a confidential informant is sufficient to establish probable cause for the issuance of a search warrant, where the informant has previously proved to be reliable.[3]

■ That is especially true, where the information from the anonymous informer is strongly corroborated by other evidence.[4] Here, the affidavit set forth facts obtained from the Albuquerque Metro Squad, that it had received complaints from nearby residents of the large amount of traffic to and from the house at 1927½, and that during a month of surveillance such Squad had met known addicts going to and from such house; that such addicts were interviewed as they left the house; that their arms bore many needlemarks, and that such addicts told the Squad that they had purchased heroin from David and Juan Baca at the house at 1927½. Indeed, the information furnished by the Metro Squad to the officers, set forth in the affidavit alone, would seem to be sufficient to show probable cause for the issuance of the warrant.

■ Defendant further contends that the search of his person was limited to a search of his person at the house designated as 1927½. We do not so read it. The affidavit and the search warrant did not either expressly or impliedly limit the search of the defendant while he was in the house at 1927½. Moreover, the place of the search of the defendant is not here involved. There was no evidence introduced of anything found on his person.

■ Defendant contends that if the search warrant was not so limited to the search of the person, it was too general and was therefore void.

It is quite evident that the defendant was fleeing from the officers. He knew Prestwood and knew that he was an officer, and ran from the Dodge automobile when Prestwood approached. We think the warrant could have been served at any place in the vicinity, especially when, as here, the defendant was fleeing from the officers, who were in hot pursuit. Any other construction would be wholly unreasonable, for if the defendant saw the officers entering the house at 1927½, he could have avoided a search of his person by merely stepping outside of such house, even though he attempted to run away and the officers pursued and overtook him and searched his person. Neither do we agree that his home, if 1927½ was his home, was a sanctuary for a fleeing criminal from officers in pursuit of him to search his person.

■ The defendant here contends that the warrant was void, because its description of the defendant was too general. It described him by his true name. He was a well known character. Prestwood knew him well and could readily identify him with certainty by his name. Hence, a description of him by name was sufficient.

We therefore hold that the warrant for the search of the defendant's person was valid, and that the officers had the right to enter the house at 1927½ and there search the person of the defendant.

■ When Prestwood entered the bedroom, the defendant knew him and knew that he was an officer. He knew that he was not there on a social call. As Prestwood entered the room, defendant made a quick movement to insert his hand between the two mattresses. Prestwood was engaged in the performance of his lawful duties as an officer when he entered the bedroom. When the defendant made his move to insert his hand between the two mattresses, Prestwood stated that, knowing the character of the defendant, he feared that he was reaching for a weapon with which to harm him. In so believing,

3. United States v. Delia, D.C.E.D.Pa., 283 F.Supp. 470, 473.

4. United States v. Pinero, D.C.S.D.N.Y., 329 F.Supp. 992, 995.

Prestwood was acting as a reasonable, prudent man, and he had a right to stop the defendant from seizing a weapon and to separate the mattresses and seize the revolver that was close to where the defendant was endeavoring to insert his hand.[5]

The revolver and the bag of plastic packets were brought into the plain view of the officers when Prestwood lifted the mattress. In so lifting the mattress, Prestwood was not engaged in making a search between the mattresses for heroin. He was searching for a revolver or other weapon with which the defendant might injure him. It was the fault of the defendant, not of the officers, that Prestwood lifted the mattress and brought into plain view, not only the revolver, but also the heroin. Under those circumstances, both the revolver and the heroin were contraband, which the officers had the right to seize, because they were performing their lawful and rightful duties, and not while they were searching for heroin.

We conclude that the order denying the motion to suppress was proper, and the judgment is therefore

Affirmed.

---

5. Terry v. Ohio, 392 U.S. 1, 23, 24, 27, 28, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889; Bell v. Kansas, 10 Cir., 452 F.2d 783.