[Civ. No. 16514. Fourth Dist., Div. One. May 19, 1977.]

PERRY ARNOLD LOHMAN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Goodwin & Grindle and Daniel W. Grindle for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Ronald S. Prager, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**BROWN (Gerald), P. J.**—Perry Arnold Lohman is charged with possessing a sawed-off shotgun (Pen. Code, § 12020, subd. (a)) and possessing controlled substances (Health & Saf. Code, § 11377). He seeks a writ of mandate to compel suppression of the evidence which supports these charges, claiming such evidence was obtained by an illegal search and seizure.

 The principal question is whether a warrant authorizing a search *of* a person permits officers to search *for* the person at another person's residence not described in the warrant, where they reasonably believe they may find him.

In connection with a homicide investigation, police officers obtained a search warrant authorizing search of (1) "the premises known as Baron's

Earth Ranch," (2) "the person of JOHN HELDER ARNETT, JR.," and (3) "the person of CHARLES MICHAEL LOHMAN" for enumerated objects. The places and persons to be searched, as well as the objects to be seized, were particularly described.

Possessed of this warrant, at 7 a.m. on September 25, 1976, officers went to the residence of Perry Lohman, Charles Lohman's brother. This was a small house located next to, but not on, Baron's Earth Ranch. The trial court helpfully made the following findings of fact regarding the execution of the warrant:

"Detective Apodaca and Deputy Wood, with guns drawn, approached the defendant's residence and Apodaca knocked on the door and identified himself as a police officer. The defendant answered the door and Detective Apodaca stated that he was looking for Charles Lohman, the defendant's brother and that he had a warrant. Apodaca who was in plain clothes had his badge in his hand. Wood was in uniform and carrying a shotgun and was standing a few feet away.

"Apodaca asked if he could come in and the defendant said 'yes' and stepped back. The officer entered the 10 × 14 foot house. Apodaca looked behind a chair and into a closet. Wood looked under a bed and into the closet. Wood observed a shotgun and picked it up to see if it was loaded. He noted the serial number. Both officers observed in plain sight marijuana in the ashtray and roach clips and pipes in plain sight on the wall. The officers were inside the house for 3 to 5 minutes and did not open any drawers. Their search was confined only to ascertaining the presence of Charles Lohman. Charles Lohman was not found. The clothes in the closet were parted when the officer looked to see if the suspect was present. The shotgun was in plain sight.

"The officers left. Deputy Wood obtained a [telephonic] search warrant for the defendant's premises. The warrant authorized a search for the shotgun and 'narcotics and drugs included but not limited to MARIJ. in manicured form. . . .' The warrant was executed and the shotgun and narcotics seized."

Although the shotgun and narcotics were seized pursuant to a second warrant, that warrant clearly issued upon information gathered in the initial search. ■ Since a search warrant obtained upon information acquired by an illegal search is itself invalid (*People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]; *Raymond* v. *Superior Court,* 19 Cal.App.3d 321,

326 [96 Cal.Rptr. 678]), the validity of the latter search depends upon the validity of the former (*Burke* v. *Superior Court,* 39 Cal.App.3d 28, 31 [113 Cal.Rptr. 801]).

It should also be noted the trial court expressly found Perry Lohman did not freely and voluntarily consent to the entry by the officers. Only the original warrant could justify the search for Charles Lohman.

At the suppression hearing, the People argued in support of the validity of the search: (1) Since it is impossible to search a person without first taking him into custody, the search warrant impliedly authorized an arrest of Charles Lohman as a step in the authorized search (relying upon *People* v. *Aguilar,* 240 Cal.App.2d 502, 505 [49 Cal.Rptr. 584], and *People* v. *Wilson,* 256 Cal.App.2d 411, 418 [64 Cal.Rptr. 172]); (2) where police have an arrest warrant, they may search for the arrestee wherever they have reason to believe they may find him (relying upon *People* v. *Bennett,* 60 Cal.App.3d 112, 119 [131 Cal.Rptr. 305]); (3) the officers had a reasonable basis to believe that Charles Lohman might be at Perry Lohman's residence; (4) therefore, entry into Perry's residence to search for Charles was justified; and the shotgun and narcotics, which were observed in plain sight from a place where the officers had a lawful right to be, should not be suppressed.

The trial court adopted this reasoning in denying the suppression motion.

Perry here attacks the People's first and third premises, arguing (1) the trial court erred in applying the *Aguilar* and *Wilson* cases to these facts, and (2) there is insufficient evidence to support the trial court's finding of fact that there was a reasonable basis for the officers to believe that Charles might be at his residence.

The latter contention is without merit. Detective Apodaca testified (1) he knew Charles had given Perry's address as his own on previous contacts with the police, and (2) another officer told him "Charles Lohman was known to stay with his brother Perry" and "Perry Lohman had stated that his brother Charles had been staying at his house" three days before the execution (two days before the issuance) of the warrant. This testimony supports the trial court's finding there was a reasonable basis for the officers to believe Charles might be at his brother's residence. We turn, therefore, to the People's thesis.

The Fourth Amendment to the federal Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Similarly, section 13 of article I of our state Constitution requires: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." ▮ Although these provisions speak in terms of "the place to be searched" and "the persons and [or] things to be seized," they permit the issuance of a warrant authorizing search of a person, so long as the person to be searched is particularly described (*People* v. *Tenney,* 25 Cal.App.3d 16, 22 [101 Cal.Rptr. 419], disapproved on other grounds in *People* v. *Leib,* 16 Cal.3d 869, 875 [129 Cal.Rptr. 433, 548 P.2d 1105]; see *Dow* v. *State,* 207 Md. 80 [113 A.2d 423, 425]; *People* v. *Bracamonte,* 15 Cal.3d 394, 400-401 [124 Cal.Rptr. 528, 540 P.2d 624]; Pen. Code, § 1525 ["A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."]).

The warrant before us conforms to constitutional standards of specificity. It would support a search of the person of Charles Lohman for the property described, providing the search was not excessive in scope (*People* v. *Bracamonte, supra,* 15 Cal.3d 394).

▮ However, the search before us was not of "the person of Charles Lohman" or any other person or place particularly described in the warrant, but rather of a *different* place, the residence of Perry Lohman. Moreover, the objective of the search was not to find and seize any of the things particularly described in the warrant, but rather to find Charles, who was, under the terms of the warrant, a "place" to be searched, rather than a "thing" to be seized. Even though the officers searched a place (Perry's residence) not described in the warrant for an object (the person of Charles) not described as one of the things to be seized, the People maintain the search was authorized by the warrant.

■ The People advance the proposition that a warrant authorizing a search of a person is in effect an arrest warrant, since execution necessarily includes taking the person to be searched into custody. However, cases relied upon by the People do not support the breadth of this contention.

In *People* v. *Aguilar, supra,* 240 Cal.App.2d 502, a magistrate "issued a warrant for the search of certain described premises, a described automobile, and of defendant's person." (*Id.,* at p. 504.) As the defendant was about to enter his automobile (the same vehicle described in the warrant), he was arrested and searched. The defendant contended "the arrest was not justified by the warrant, since the warrant authorized only search and not arrest, and that there was insufficient probable cause to justify an arrest without warrant." (*Id.,* at p. 505.)

The Court of Appeal found no error in the manner of arrest, stating: "The warrant did authorize a search of defendant's person. *Since it is an obvious impossibility to search the person of an individual without first taking him into custody, the warrant impliedly authorized an arrest as a step in the authorized search.* And it is the product of the search which was used against defendant and of which he complains. The search being lawful, the evidence thereby obtained was admissible." (*Id.,* at p. 505, italics added.)

In *Aguilar,* no search was undertaken *for* the defendant; rather, he was discovered getting into his car from a place where officers apparently had a lawful right to observe him. The quoted language merely stands for the proposition that the person to be searched may be detained for that purpose. It does not stand for the proposition that a search warrant for a person authorizes any greater intrusion into his liberty or privacy than is required to search him in a reasonable manner.

In *People* v. *Wilson, supra,* 256 Cal.App.2d 411, the officers went to the residence of Charlene Peterson with a search warrant to search her residence, her person, and her 1962 Ford automobile. "The Ford was in the driveway and its path was blocked by a 1960 Chevrolet belonging to defendant." (*Id.,* at p. 414.)

The residence was placed under surveillance. "About 6 p.m., Charlene left, driving the Chevrolet. Officer Grennan followed her. She looked over her shoulder, dropped her right hand from the steering wheel to the floor, then put both hands on the wheel. The officer arrested Charlene, searched the car, and found two condoms of heroin under the front seat.

The officer testified that Charlene's conduct in the automobile was furtive and suspicious. The officer also testified that, sometime between 4:30 and 6 p.m., prior to these events, he had conversed with 'a person' who said he had ordered two ounces of heroin from Charlene 'to be delivered in the hour.'" (*Id.,* at pp. 414-415.) Here again, unlike the facts before us, the person to be searched was observed in public; no search of a residence was conducted to find Charlene Peterson. The issue presented was the scope of search permitted after she was in custody.

Again the Court of Appeal concluded:

"Since we hold that the warrant was valid, it follows that the search of the Chevrolet was lawful and the narcotics thus found admissible, quite apart from any question of the right of the officer to arrest Charlene because of her 'furtive' conduct. The warrant authorized a search of Charlene's person. As we pointed out in *People* v. *Aguilar, supra,* 240 Cal.App.2d 502, 505, 'Since it is an obvious impossibility to search the person of an individual without first taking him into custody, the warrant impliedly authorized an arrest as a step in the authorized search.' With Charlene lawfully in custody, and with knowledge of conduct on her part which suggested a recent secretion of something in the car she was driving, a search of the car as part of the procedure was clearly proper.

"In addition, the information previously given to the officers, together with Charlene's conduct when she realized that she was being followed, was itself sufficient to justify her arrest and the search that followed." (*People* v. *Wilson, supra,* 256 Cal.App.2d 411, 417-418.)

Search of the Chevrolet, which was not described in the warrant, was deemed proper either (1) because Charlene was lawfully in custody and appeared to have hidden something in the car, or (2) as incidental to a lawful arrest. These special factors are not present here.

Similarly, the cases from other jurisdictions cited by the People are distinguishable. In *United States* v. *Baca* (10th Cir. 1973) 480 F.2d 199, officers possessed a warrant to search the person of David Baca. They observed him running from an automobile to a house and pursued him. After they were refused permission to enter the house, they forcibly entered through the open door. When Baca was discovered on a bed, he "made a quick motion to insert his left hand between the mattresses." (*United States* v. *Baca, supra,* 480 F.2d 199, 202.) There, after Baca was subdued, officers discovered weapons and criminal evidence, which

plainly were within Baca's immediate reach and control. The case is explained by the court's observation that Baca "was fleeing from the officers, who were in hot pursuit." (*Id.,* at p. 203.) The officers had a right to detain Baca to search him; they observed him in public; he fled; and they were justified in making a forcible entry in hot pursuit. There is no similarity between these circumstances and the facts before us.

In *Dow* v. *State, supra,* 113 A.2d 423 and *State* v. *Malave,* 127 N.J.Super. 151 [316 A.2d 706], the persons to be searched under warrant were confronted and searched by officers on public streets.

█ The cases thus recognize search warrants may authorize a search of a person if the person is particularly described (*People* v. *Tenney, supra,* 25 Cal.App.3d 16; *Dow* v. *State, supra*). Officers may detain the person to be searched for the purpose of conducting the search (*People* v. *Aguilar, supra,* 240 Cal.App.2d 502; *People* v. *Wilson, supra,* 256 Cal.App.2d 411). If the person to be searched, having lawfully been observed, flees, officers may pursue him (*United States* v. *Baca, supra,* 480 F.2d 199). Officers executing such a warrant may only search in a reasonable manner (*People* v. *Bracamonte, supra,* 15 Cal.3d 394). It is reasonable for searching officers to search an area in which it appears to the officers the person may have hidden evidence (*People* v. *Wilson, supra,* 256 Cal.App.2d 411) or may gain access to a weapon (*United States* v. *Baca, supra,* 480 F.2d 199)—the area "within his immediate control" (cf. *Chimel* v. *California,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034]). Although it is clear a search warrant authorizing a search of a person need not specify the place in which the search is to be conducted (see, e.g., *Dow* v. *State, supra,* 113 A.2d 423, 425; *State* v. *Malave, supra,* 316 A.2d 706, 708), all the cases relied upon by the People involved situations in which officers observed the person to be searched in public. None involved a search of a private residence *for* the person to be searched where, as here, there were no exigent circumstances.

Besides being unsupported by authority, the theory advanced by the People is unsound in principle. First, the asserted analogy between a search warrant authorizing a search of a person and an arrest warrant is flawed. █ An arrest warrant issues upon a complaint when a magistrate is "satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it." (Pen. Code, § 813.) The warrant commands the arrest of the defendant, but need not specify the place of arrest (Pen. Code, §§ 814, 815). Thus it is designed to protect primarily

the liberty and privacy interests of the defendant. Here, the People advance the proposition that a warrant authorizing a search of a person is in effect an arrest warrant, since execution necessarily includes the taking of the person to be searched into custody; yet they have not demonstrated to a magistrate that there is probable cause to believe the person to be searched has committed a crime. If search requires arrest, as the People suggest, then protection of the liberty and privacy expectations of the person to be searched would require the same showing necessary to obtain an arrest warrant.

An even more serious flaw in the People's thesis is that it ignores the privacy interest of the owner of the premises searched, in this case Perry Lohman. ■ As the Supreme Court has so well observed: "An intrusion by the state into the privacy of the home for any purpose is one of the most awesome incursions of police power into the life of the individual. Unrestricted authority in this area is anathema to the system of checks envisaged by the Constitution. It is essential that the dispassionate judgment of a magistrate, an official dissociated from the 'competitive enterprise of ferreting out crime' [citation], be interposed between the state and the citizen at this critical juncture. The frightening experience of certain foreign nations with the unexpected invasion of private homes by uniformed authority to seize individuals therein, often in the dead of night, is too fresh in memory to permit this portentous power to be left to the uninhibited discretion of the police alone." (*People* v. *Ramey*, 16 Cal.3d 263, 275 [127 Cal.Rptr. 629, 545 P.2d 1333].) Here, the People have searched the residence of Perry Lohman to find Charles Lohman, yet no magistrate was called upon to determine, in dispassionate judgment, whether there was probable cause to believe Charles Lohman would be found at that place. ■ ■■■ This the Constitution clearly requires if the People were searching for an object,[1] and we see no reason why the standard should be any less if officers are looking for a person who is to be searched under warrant.

■ In the search before us the "place" to be searched described in the warrant, the person of Charles Lohman, became the "object" to be seized in the minds of the officers. This shift required the officers to

---

[1]Decisions of the United States Supreme Court "make clear that only in 'a few specifically established and well-delineated' situations [citation], may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation [citations]." (*Vale* v. *Louisiana*, 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969].)

obtain a warrant particularly describing the place to be searched, Perry Lohman's residence. Such a warrant would comport with the constitutional requirement that the place to be searched be specified—a requirement "designed to prevent general exploratory searches which unreasonably interfere with a person's right to privacy" (*Burrows* v. *Superior Court*, 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590]).

Our conviction is strengthened by examination of *People* v. *Ramey*, *supra*, 16 Cal.3d 263. In that case officers entered the defendant's home without an arrest or search warrant for the purpose of arresting him. After examining the authorities, the Supreme Court held "that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances" (*People* v. *Ramey*, *supra*, 16 Cal.3d 263, 276). Here, officers possessed neither an arrest warrant for Charles nor a search warrant for Perry's residence. The information which led them to believe Charles might be at Perry's residence was known even before the search warrant at issue was obtained. We see no reason why a search warrant authorizing a search of Perry's residence could not[2] and should not have been obtained.

We therefore hold a search warrant authorizing a search of a person does not permit a search for that person at a residence not described in the warrant, even where officers have a reasonable basis to believe the person to be searched is present. Such a search is per se unreasonable in the absence of exigent circumstances. Accordingly, the evidence in the matter before us must be suppressed.

---

[2]Penal Code section 1524 provides:

"A search warrant may be issued upon any of the following grounds:

"1. When the property was stolen or embezzled.

"2. When the property or things were used as a means of committing a felony.

"3. When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered.

"4. When the property or things to be seized consist of any item or constitutes any evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

"The property or things described in this section may be taken on the warrant from any place, or from any person in whose possession it may be."

If there was probable cause to believe seizable evidence was present on the person of Charles and Charles was present at Perry's residence, a carefully drawn warrant could have issued authorizing a search of Perry's residence for Charles and a search of Charles for enumerated objects.

Let a peremptory writ of mandate issue compelling the respondent court (1) to vacate its minute order of January 31, 1977, insofar as it denies petitioner's motion to suppress evidence and (2) to grant the motion. The stay ordered by this court on March 21, 1977, is vacated.

Cologne, J., and Staniforth, J., concurred.