**COMMONWEALTH of Pennsylvania**

v.

**Javon Omar FRANKLIN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 1, 2009.

Filed Feb. 23, 2010.

William J. Hathaway, Erie, for appellant.

Bradley H. Foulk, Assistant District Attorney, Erie, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., ALLEN and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 This is an appeal from an order denying appellant relief under the Post–

Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546. We affirm.

¶ 2 To set up the background of the present case, we quote the facts set forth in the memorandum affirming appellant's judgment of sentence on direct appeal:

On January 3, 2007, Lieutenant Michael Nolan obtained, and coordinated, the execution of a search warrant for a residence in Erie, Pennsylvania, that was suspected to have housed drug-related activities. Lieutenant Nolan first established surveillance on the residence, and observed codefendant, Steven Maurice Barry–Gibbons, leave the residence and drive away in a silver Mitsubishi along with three unidentified people. After following the Mitsubishi for approximately eight blocks, Lieutenant Nolan stopped the vehicle and conducted a search of the vehicle's occupants. The search of codefendant Barry–Gibbons revealed that he was in possession of a small bag of crack cocaine and a digital scale.

Following the search of codefendant Barry–Gibbons, Lieutenant Nolan received a report that appellant had left the residence. Lieutenant Nolan proceeded to the reported location of appellant, stopped him, and conducted a search of his person. The search provided 17.7 grams of crack cocaine and 13.4 grams of marijuana—the drugs were packaged in six and four individual bags, respectively. Appellant was then placed under arrest.

Following his arrest, appellant informed police that the residence in question was leased by codefendant Barry–Gibbons, and that appellant occupied a bedroom in the residence. The police then executed the search warrant. Inside appellant's bedroom, officers recovered 15.7 grams of marijuana divided into five bags and $350.00 from a shoe-box. Appellant acknowledged that those items were his. The ensuing search of the remainder of the residence, during which appellant pointed out hidden items to the officers, resulted in the seizure of the following narcotics:

- 14.7 grams of crack cocaine found on the kitchen counter,

- 4.8 grams of heroin found in the freezer,

- 19.4 grams of crack cocaine and 65.7 grams of marijuana found in the bedroom alleged to belong to codefendant,

- 1.6 grams of marijuana found in the kitchen, and

- 143.2 grams of crack cocaine and 54.5 grams of powder cocaine found in trick containers located in a cupboard between the kitchen and the bathroom.

Subsequently, the Commonwealth filed a ten-count criminal information against appellant that included, in relevant part, charges of (1) possession of '220.48' grams of cocaine (count I), and possession with intent to deliver 220.48 grams of cocaine (count IV). Appellant proceeded to a jury trial, and the jury, on July 11, 2007, found appellant guilty of possession of, and possession with intent to deliver, 220.48 grams of cocaine (counts I and IV), possession of 96.4 grams of marijuana (count II), and possession of drug paraphernalia (count VII). However, the jury found appellant not guilty of possession with intent to deliver 4.8 grams of heroin (count VI), and further declared it could not reach verdicts on the five remaining counts, which included three counts of conspiracy. The trial court proceeded to sentencing on counts I, II, IV, and VII, and, on September 10, 2007, sentenced appellant to an aggregate term of imprisonment of from seven years to fourteen years.

*Commonwealth v. Franklin,* No. 1834 WDA 2007, unpublished memorandum at 1–3 (Pa.Super. filed July 16, 2008).

¶ 3 Appellant subsequently took an appeal to this court that resulted in the affirmance of his judgment of sentence on July 16, 2008. On August 13, 2008, appellant filed a *pro se* petition under the PCRA. Counsel was appointed and filed a supplement to appellant's *pro se* petition on September 12, 2008. A hearing was held on appellant's petition on December 8, 2008, and on December 19, 2008, appellant's PCRA petition was dismissed. The present, timely appeal followed.[1]

¶ 4 Appellant raises one issue in the present appeal:

A. WHETHER THE LOWER COURT ERRED IN DENYING PCRA RELIEF IN THAT THE APPELLANT WAS AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL RELATING TO THE FAILURE TO COUNSEL [sic] TO PURSUE A SUPPRESSION MOTION THEREBY DISREGARDING A VIABLE DEFENSE?

Appellant's brief at 2.

■■■ ¶ 5 Initially, we note:

Our standard of review of a PCRA court's denial of a petition for postconviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Lawrence,* 960 A.2d 473, 476 (Pa.Super.2008) (citations omitted). Further, considering just the specific claim appellant has raised in this appeal, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S.A. § 9543(a)(2)(ii). As our supreme court has stated:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Commonwealth v. Natividad,* 595 Pa. 188, 207, 938 A.2d 310, 321 (2007). The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. *Id.* Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness. *Id.*

¶ 6 Appellant posits that his trial counsel was ineffective in failing to pursue a suppression motion related to his stop and seizure outside of the residence which was the subject of the previously issued search warrant. We disagree.

¶ 7 We first note that appellant builds an argument upon an unsubstantiated premise: that he was not named as a party to

---

1. Appellant's notice of appeal was filed on January 20, 2009, a Tuesday, which was a day after the observed Martin Luther King holiday. Thus, appellant's notice of appeal was timely filed. *See* 1 Pa.C.S.A. § 1908.

be searched in the search warrant at issue. In his brief, appellant contends "ostensibly the appellant was not a designated target of the search warrant, but instead the scope of the warrant was limited to a search of the premises without specific designation of any parties of interest." (Appellant's brief at 7.) The affidavit of probable cause supporting the search warrant contains a request that the warrant include the person of Javon Franklin and the warrant actually issued lists, under the designation "specific description of premises and/or person to be searched," "The person of JAVON FRANKLIN, B/M, 25yoa, 6'1", 180lbs." (Commonwealth's Exhibit # 1, Supp. Record.) Appellant also conceded upon cross-examination at the PCRA hearing that the search warrant authorized the police to search appellant's person. Thus, the warrant at issue specifically named him as a party to be searched in addition to the premises where he and Barry–Gibbons resided. In turn, at least a portion of appellant's argument is premised upon a misapprehension of fact.

■ ¶ 8 With the factual scenario sufficiently delineated, we move to an analysis of appellant's primary contention, redefined as an assertion that a search warrant naming an individual to be searched in addition to a residence authorizes a search of the person only in conjunction with the execution of the warrant at the premises named.

¶ 9 Our research has yielded no cases issued in Pennsylvania that can be deemed directly on point. Perhaps this is because, as observed by the Superior Court of New Jersey in *State v. Malave,* 127 N.J.Super. 151, 154, 316 A.2d 706, 707 (1974), "[w]arrants to search the person are comparatively rare, probably because most searches of individuals take place as incident to arrest." Despite the relative rarity of these warrants, the weight of authori-

ty holds "that a warrant may issue to search a person as well as a place." *Id.* Speaking to this point, noted criminal law authority and commentator Wayne R. LaFave writes:

> Although it has occasionally been asserted that search warrants for the search of persons are not contemplated under the Fourth Amendment for the reason the Constitution forbids the issuance of warrants except those 'particularly describing the place to be searched, and the persons or things to be seized,' that contention has understandably not prevailed. As for the claim that the language just quoted requires that a search warrant for a person indicate the place where he is to be found and searched, this is likewise without merit. If there is probable cause to believe that a certain specifically-described person has the described things to be seized on his person, there is no reason why the search of that person must be limited to a particular location. (This is not to say, however, that specification of location will never be essential; sometimes, as discussed below, the location will be necessary to complete an otherwise insufficient description of the person, and on other occasions the probability that the described person has the items sought on his person may exist only when he is at a certain place.) Of course, if the command of the search warrant is that the described person be searched only at a particular location, then a search of that person elsewhere exceeds the authority granted by the warrant.

Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 4.5(e), at 596–597 (4th Ed.2004).

¶ 10 The above principles were on display in the case of *Lohman v. Superior Court,* 69 Cal.App.3d 894, 138 Cal.Rptr. 403 (1977). There, police were armed with

a search warrant "authorizing search of (1) 'the premises known as Baron's Earth Ranch,' (2) 'the person of John Helder Arnett, Jr.,' and (3) 'the person of Charles Michael Lohman.'" *Id.* at 897–898, 138 Cal.Rptr. at 405. Seeking Charles Lohman, the police went to the residence of Lohman's brother, Perry Lohman. The residence in question was a small house located next to, but not on, Baron's Earth Ranch. With guns drawn, the officers approached the small residence and knocked on the door. When Perry Lohman answered the door, the officers stated that they had a warrant for Charles Lohman and asked if they could enter the residence and Lohman responded "yes." Upon entering the residence, and while searching for Charles Lohman, police observed in plain sight marijuana and a shotgun. These items were later retrieved pursuant to the issuance of a second warrant. In discussing the legality of the search of Perry Lohman's residence, the court referred to provisions in the state constitution, remarking "[a]lthough these provisions speak in terms of 'the place to be searched' and 'the persons and [or] things to be seized,' they permit the issuance of a warrant authorizing search of a person, so long as the person to be searched is particularly described." *Id.* at 900, 138 Cal. Rptr. 403.

■ ¶ 11 *Lohman* cites to *Dow v. State*, 207 Md. 80, 113 A.2d 423 (1955), where the Court of Appeals of Maryland considered the search of three men pursuant to a warrant.

The warrant commanded the police 'to go to the vicinity of 2115 W. North Ave., Baltimore City, State of Maryland; and there diligently search the pockets of the clothing of the said three colored men who are previously described and who will be identified by the said Officer * * *.' The police, upon obtaining the warrant, immediately went to the vicinity of 2210 Presstman Street [a location eight blocks from 2115 W. North Ave.] and there searched and arrested the two appellants, finding on one a package of lottery slips and on the other, a cut card, which is used in lottery.

*Id.* at 81, 113 A.2d at 424. In discussing the legality of the search of the men in a location eight blocks away, and considering the State's argument that that location was "in the vicinity of" the named location, the court observed:

The historical background which led to the prohibitions against unlawful search and seizure found in the Federal and State Constitutions is set forth in *Asner v. State*, 193 Md. 68, 75, 65 A.2d 881. Generally, the statutory implementations of these constitutional safeguards have authorized, and most of the decisions deal with, the search of places and things but not of persons. However, in Maryland, the Legislature by Code (1951), Art. 27, Sec. 328, has permitted the issuance of a warrant authorizing police to ' * * * search such suspected *individual,* building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the *individual,* building, apartment, premises, place or thing to be searched * * *.' (Emphasis supplied). The requirement of the Code is that the warrant describe an individual to be searched with reasonable particularity. If this is done, the warrant is not a general warrant condemned by the Constitution.

*Id.* at 82–83, 113 A.2d at 424. As in Maryland, Pennsylvania's rules of criminal procedure implicitly authorize the search of

persons. Pennsylvania Rule of Criminal Procedure 205 provides:

> Rule 205. Contents of Search Warrant
>
> Each search warrant shall be signed by the issuing authority and shall:
>
> (1) specify the date and time of issuance;
>
> (2) identify specifically the property to be seized;
>
> (3) name or describe with particularity the person or place to be searched

Pa.R.Crim.P. 205 (emphasis added).

¶ 12 In the previously mentioned *Malave*, a warrant was issued authorizing a search of "the premises of 851 Madison Ave 3rd floor and all parts connected thereto. Plus a Puerto Rican male in his forties about 5′6 in height medium build who lives at said address." *Malave*, 127 N.J.Super. at 153, 316 A.2d at 707. Malave was stopped and searched on the street a considerable distance from 851 Madison Avenue, prompting the defendant to argue "that the warrant authorized the search of a person only at or near 851 Madison Avenue and not at some other location." *Id.* at 154, 316 A.2d at 707. The court disagreed, concluding "that the warrant authorized two independent searches—one of a person and the other of a place. We see no reason why a warrant to search a person must specify the place where he is to be searched." *Malave*, 127 N.J.Super. at 154, 316 A.2d at 707.

¶ 13 Lastly, on essentially the same set of facts, in *Westbrook v. State*, 2006 WL 1215135, 2006 Tenn.Crim.App. LEXIS 369 (Tenn. Ct. of Crim. Apps.2006), the Tennessee Court of Criminal Appeals found no ineffective assistance of counsel for failure to file a suppression motion. There:

> The proof at trial established that the petitioner's arrest arose as the result of a tip from a confidential informant, who reported to West Tennessee Violent Crime and Drug Task Force agents that the petitioner was selling cocaine from a residence located at 364 Jim Jackson Road in rural Gibson County. *Id.* at **7–8. The home, where the petitioner had been residing for two or three weeks prior to his arrest, was owned by L.J. Woodruff, the father of the petitioner's girlfriend and codefendant, Darlene Echols. *Id.* at **3–6. On March 15, 2002, drug task force agents went to the home to execute a search warrant, saw the petitioner leaving the residence, and followed him to Humboldt where they stopped him, placed him under arrest, and escorted him back to the residence.

*Id.* at *1, 2006 Tenn.Crim.App. LEXIS 369 at *2–3. As does appellant here, Westbrook claimed counsel was ineffective due, in part, to the "failure to ... file a motion to suppress the petitioner's 'stop, arrest and transportation' to the residence." *Id.* at *4, 2006 Tenn.Crim.App. LEXIS 369 at *10. On this contention, the court stated:

> Trial counsel, however, testified that he had no legal basis for the motion to suppress and that the search warrant specifically named the petitioner as a person to be searched. The search warrant, which was made an exhibit to the hearing, reveals that trial counsel's memory was accurate.

*Id.*

¶ 14 The above case samples are undoubtedly not exhaustive, but appear to fully represent the prevailing view on the issue at hand: that a search warrant can issue for a person and when it does, the search need not be at the location specified in the warrant. Given the above authority, we see no reason Pennsylvania would take a divergent view. Inasmuch as counsel cannot be deemed ineffective for either failing to raise a claim without merit, *Commonwealth v. Ellis*, 700 A.2d 948 (Pa.Super.1997), or to anticipate a change in the

law, *Commonwealth v. Cox,* 581 Pa. 107, 863 A.2d 536 (2004), counsel cannot be deemed ineffective for failing to file a motion to suppress in the present case.

¶ 15 Order affirmed.