Filed 8/31/16  P. v. Dempsey CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042029 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F23191) |
| v. | |
| KIRSTIN ANN DEMPSEY, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

After the trial court denied her motion to suppress evidence (Pen. Code, § 1538.5, subd. (a)(1)), defendant Kirstin Ann Dempsey pleaded no contest to possession of heroin for sale (Health & Saf. Code, § 11351) and admitted that she had two prior convictions of narcotics offenses (Health & Saf. Code, § 11370.2, subd. (a)).  Defendant was sentenced to a nine-year prison term, comprised of a three-year term for the substantive offense and consecutive three-year terms for the two prior conviction allegations.

On appeal, defendant contends the trial court erred by denying her motion to suppress evidence.  Defendant argues that although there was a valid warrant authorizing the police to search *for* and seize defendant at her home and in her vehicle, the warrant did not authorize a search *of* her person, nor her seizure at a different location:  the sheriff's office.  Defendant similarly contends that although the warrant authorized a

search *for* cellular phones, it did not authorize a search *of* her cell phone. Additionally, defendant contends the trial court did not follow the proper procedures for conducting an in camera review of the sealed portion of the search warrant affidavit. For reasons that we will explain, we will affirm the judgment.

## II. BACKGROUND

### A. *The Search Warrant and Affidavit*

On June 4, 2012, a search warrant issued upon the affidavit of Santa Cruz County Sheriff's Deputy Nick Baldrige. The warrant authorized the search of a premises on Kenilworth Lane. The warrant also authorized the search of all vehicles on or in the vicinity of those premises "for which keys can be located in the residence or on the person of [defendant]," including a blue Nissan Armada. The warrant specifically authorized a search for defendant herself and for property listed on an addendum, which included cellular phones, narcotics, United States currency, and "business records related to the sales, purchases, and customer lists of purchasers and sellers of narcotics." The warrant authorized the seizure of defendant and the listed property.

The search warrant affidavit provided the following information.

On April 25, 2012, an officer told Deputy Baldrige that a wanted parolee, Ricardo Monjaraz, was staying at a residence on Kenilworth Lane. Monjaraz had been seen driving a blue Nissan SUV that belonged to "the female that lived at the Kenilworth address." A confidential informant had reported that Monjaraz was selling narcotics. A confidential attachment to the affidavit contained identifying information about the confidential informant and explained why the informant wished to remain anonymous. On May 2, 2012, Monjaraz was arrested.

The search warrant affidavit next described information Deputy Baldrige had received from a second confidential informant. Over the previous three months, the second informant had observed "a large amount of foot traffic"—up to 20 people per

day—at the residence on Kenilworth Lane. The foot traffic usually occurred during the day, and the people who visited the residence only stayed a short period of time. Some of the visitors entered the residence; others were met outside. The second informant had contacted Deputy Baldrige within the previous seven days to confirm that the activity was still occurring on an almost daily basis. The second informant was "concerned about having narcotics activity in the neighborhood."

Deputy Baldrige had confirmed that defendant's "address of record" was the residence on Kenilworth Lane and that a blue Nissan Armada was registered to that address. On May 25, 2012, Deputy Baldrige had conducted a vehicle stop after observing a blue Nissan Armada "roll through" a stop sign. Defendant was driving the vehicle. When defendant took her identification out of her wallet, Deputy Baldrige noticed defendant had a large quantity of cash. Defendant did not appear to be under the influence. Deputy Baldrige confirmed defendant's address and released her with a verbal warning.

On May 26, 2012, Deputy Baldrige had responded to the residence on Kenilworth Lane after defendant called the police to report an attempted home invasion robbery. According to defendant, a male wearing a ski mask and holding a handgun had attempted to kick down the front door of her residence. When police responded to defendant's residence, another male was present; he was arrested for a parole violation. Deputy Baldrige noticed "a blue latex glove that had the fingertips cut off and a piece of one of the fingertips on the ground." He knew that narcotics dealers are often victims of robberies, and that the fingertips of latex gloves are used as a form of packaging material.

Deputy Baldrige requested a criminal history check for defendant and discovered that in December 1998 and June 1999, defendant had been convicted of possessing narcotics for sale.

**B.** **_Defendant's Detention and the Searches of Her Person, Residence, and_**
**_Cell Phone_**

On June 6, 2012, a detective contacted defendant and requested that she come to the sheriff's office to discuss the attempted home invasion robbery. When defendant arrived at the sheriff's office, at about 2:50 p.m., Deputy Baldrige detained her and "collected" her purse and cell phone, which was in the pocket of her jacket. Deputy Baldrige found $1,304 in cash and a prescription pill bottle containing Alprazolam and Diazepam tablets.

At about 3:49 p.m. that same day, deputies executed the search warrant at defendant's residence. They found indicia for defendant, a Ziploc bag with a corner cut out, a Ziploc bag containing marijuana residue, numerous one-inch plastic baggies, packaging materials, a scanner, four rounds of .22-caliber ammunition, four cell phones, and 6.7 grams of heroin.

Following the search of defendant's residence, Deputy Baldrige spoke with defendant at the sheriff's office. Defendant waived her _Miranda_ rights[1] and denied knowing about or possessing the heroin.

While defendant was speaking with Deputy Baldrige, a text message came through on her cell phone. The message was identified as coming from a person named Elliot. The message stated: "Hey can u help me out today with a half taco for half price. I just need to make it to tomorrow and then I w[i]ll get u back. I will be in town at 6." Defendant stated that she did not know who Elliot was, explaining that the phone was old.

Deputy Baldrige replied to Elliot from defendant's cell phone and offered to meet. Elliot indicated his father would be "picking it up." Deputy Baldrige told Elliot to have his father come to a Jack in the Box in 10 minutes. Elliot indicated his father would be

---

[1] _Miranda v. Arizona_ (1966) 384 U.S. 436 (_Miranda_).

driving "[t]he same truck," and he asked for confirmation that he would be getting a "half burger." Elliot later sent a text message indicating that his father was at the meeting spot.

At about 5:30 p.m., deputies contacted Martin Kruger, the father of Elliot, at the Jack in the Box. After being advised of his *Miranda* rights, Kruger stated that his son was a heroin addict and that he had gone to Jack in the Box to buy $20 worth of heroin for his son. Kruger had previously met a female from whom Elliot had bought heroin. He had gone to an area near Kenilworth Lane, and the female had given him a plate with foil on it in exchange for $40. Kruger knew the female as "Rabbit" and had seen her driving a dark colored SUV. He identified a photograph of defendant as the female.

After defendant was booked into jail, Deputy Baldrige searched defendant's cell phone and located "pay/owe notes" dated June 4, 2012.

### C. *Charges and Motion to Suppress*

Defendant was charged with possession of heroin for sale (Health & Saf. Code, § 11351). The information alleged that defendant had two prior convictions of narcotics offenses (Health & Saf. Code, § 11370.2, subd. (a)).

Defendant filed a motion to suppress. Defendant argued that "the search and seizure of herself and her effects" at the sheriff's office were not authorized by the search warrant. Defendant argued that the search warrant authorized only a search of her residence and all vehicles at her residence. She further argued there were no exigent circumstances, that she had not consented to be searched, that the search could not be justified as incident to an arrest since she was not arrested until several hours later, and that the search was not permitted in conjunction with her detention because there was nothing to suggest that she was armed and dangerous. Defendant also argued that the search of her cell phone was not authorized by the warrant and that no exceptions to the warrant requirement applied.

5

In addition, defendant moved to quash and traverse the search warrant. She sought disclosure of the identity of the two informants, and she requested the trial court perform an in camera review of the sealed portion of the search warrant affidavit as provided by *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*).

The prosecution filed opposition to defendant's motions. The prosecution argued that the search of defendant and her purse was authorized because the warrant permitted a search of her vehicle and both defendant and her purse had been inside the vehicle when she drove to the sheriff's office. The prosecution alternatively argued that the officers had relied in good faith on the warrant. Regarding defendant's motion to quash and traverse the warrant, the prosecution agreed that the trial court should hold an in camera hearing pursuant to *Hobbs*.

The trial court held a hearing on the motions on May 5, 2014. The parties presented argument but no additional evidence at the hearing.

Defendant argued that the warrant only authorized a search of defendant's residence and vehicle *for* defendant, not a seizure *of* her at other locations. Defendant argued that even if the warrant authorized a search of defendant's person for keys to vehicles, it did not authorize a search of other items on defendant's person, including her cell phone. Defendant argued that the good faith exception did not apply because the officer who had executed the search had written the search warrant.

The prosecutor argued that the trial court should "not adopt the hypertechnical approach that the defense is asking for." The prosecutor reiterated the argument made in his written opposition: that the warrant permitted a search of defendant's vehicle, and that both defendant and her purse had been in that vehicle. The prosecutor also argued that the items found on defendant's person would have been inevitably discovered after she was arrested following the search of her home.

Before ruling on the motion to suppress, the trial court held an in camera hearing to review the sealed portion of the search warrant affidavit and question Deputy Baldrige.

6

The trial court found there was "a legitimate need" to protect the identity of the confidential informant, both at the time the search warrant issued and at the time of the hearing. The trial court also found "no problems with the reliability of the informant" and that there was probable cause for issuance of the search warrant.

The trial court then explained why it was denying defendant's motion to suppress. The trial court agreed with the prosecutor that the defense argument placed "form over substance" and found that both the magistrate and Deputy Baldrige had "contemplated that the warrant authorized the search of [defendant's] person." Alternatively, the trial court found, the items located on defendant's person "would have been inevitably discovered," since defendant was lawfully detained until after the search warrant was executed at her home.

### D.     Plea, Admissions, and Sentencing

After the trial court denied her motion to suppress, defendant pleaded no contest to possession of heroin for sale (Health & Saf. Code, § 11351) and admitted that she had two prior convictions of narcotics offenses (Health & Saf. Code, § 11370.2, subd. (a)). Defendant was sentenced to a nine-year prison term, comprised of a three-year term for the substantive offense and consecutive three-year terms for the two prior conviction allegations.

### III.     DISCUSSION

### A.     Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

Relevant to this case, we independently review the question of whether a search warrant has sufficiently described the place to be searched. (*People v. Amador* (2000) 24 Cal.4th 387, 393 (*Amador*).)

### B. *Validity of the Detention and Search of Defendant*

Defendant argues that although there was a valid warrant authorizing the police to search her residence and vehicle *for* defendant, the warrant did not authorize her detention at the sheriff's department, nor a search *of* her at any location. Thus, she contends, the evidence seized from her person at the time of her detention (the cell phone, pill bottle, and wallet) should have been suppressed, along with her statements, the texts messages retrieved from her cell phone, the statements of Kruger, and any potential testimony by Kruger or Elliot.

In order to prevent general searches, the Fourth Amendment to the United States Constitution requires that a search warrant "particularly describ[e] the place to be searched." (See *Amador, supra,* 24 Cal.4th at p. 392.) "This purpose—to limit the search authorization to things and areas for which probable cause exists and avoid exploratory searches—must be kept in mind in determining the validity of a warrant containing an inaccurate description of the place to be searched. '[T]he purpose of the exclusionary rule is ". . . to deter illegal police conduct, not deficient police draftsmanship . . . ." ' [Citation.]" (*Ibid.*) Thus, "[c]omplete precision in describing the place to be searched is not required. 'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' [Citation.] . . . When the warrant contains an inaccurate description, '[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.' [Citation.] 'In applying this test, we are mindful of the general rule that affidavits for

search warrants must be tested and interpreted in a common sense and realistic, rather than a hypertechnical, manner.' [Citation.]" (*Id.* at pp. 392-393.)

Defendant relies on *Lohman v. Superior Court* (1977) 69 Cal.App.3d 894 (*Lohman*), which held that "a search warrant authorizing a search *of* a person does not permit a search *for* that person at a residence not described in the warrant." (*Id.* at p. 905, italics added.) In *Lohman*, the warrant authorized the search *of* a place called Baron's Earth Ranch and the search *of* the defendant's brother, Charles. (*Id.* at pp. 897-898.) Looking for Charles, the police searched the defendant's residence, which was located next to Baron's Earth Ranch. (*Id.* at p. 898.) Charles was not found at the defendant's residence, but the police did see marijuana and a shotgun in plain view. The police subsequently obtained a warrant to search the defendant's residence and seized the marijuana and shotgun. The defendant then moved to suppress the evidence, arguing that the information underlying the second warrant had been discovered during an illegal search. The trial court denied the motion, finding that the original search warrant impliedly authorized the arrest of Charles and therefore permitted the police to search for him wherever they believed they might find him. (*Id.* at p. 899.)

On appeal, the *Lohman* court noted that the warrant had described Charles as "a 'place' to be searched, rather than a 'thing' to be seized," and that instead of searching Charles himself, the police had searched "a *different* place"—the defendant's residence. (*Lohman, supra,* 69 Cal.App.3d at p. 900.) The court distinguished search warrants that authorized searches *of* a person, noting that such warrants allow an officer to "detain the person to [be] searched for the purpose of conducting the search [citations]." (*Id.* at p. 903.) The *Lohman* court also distinguished "a search of a private residence *for* the person to be searched" from cases in which "officers observed the person to be searched in public." (*Ibid.*)

Here, in contrast to *Lohman,* defendant *was* "described as one of the things to be seized." (*Lohman, supra,* 69 Cal.App.3d at p. 900.) Moreover, the search warrant

9

explicitly authorized a search *of* defendant's person for keys to vehicles and thus allowed defendant to be detained "for the purpose of conducting the search [citations]." (*Id.* at p. 903; see also *People v. Aguilar* (1966) 240 Cal.App.2d 502, 505 [search warrant authorizing search "of defendant's person" impliedly authorized the defendant's arrest since "it is an obvious impossibility to search the person of an individual without first taking him into custody"].)

*Lohman* is also distinguishable because it involved the unauthorized search of another person's home, " 'where privacy expectations are most heightened.' " (*Kyllo v. United States* (2001) 533 U.S. 27, 33.) In the case before us, "officers observed the person to be searched in public" (*Lohman, supra,* 69 Cal.App.3d at p. 903), and the search of defendant's home and the seizure of her person were both specifically authorized by the search warrant.

It is also significant that defendant's detention was essentially coextensive with the execution of the search warrant at her home. Defendant was detained at 2:50 p.m., and within one hour, the police executed the search warrant at her home. "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (*Michigan v. Summers* (1981) 452 U.S. 692, 705, fns. omitted (*Summers*).)

Interpreting the search warrant narrowly and technically, as defendant urges us to do, would not promote the purpose of the Fourth Amendment, which is to deter illegal police conduct. (See *Amador, supra,* 24 Cal.4th at p. 392.) The search warrant expressly authorized a search *for* defendant in her home or in her vehicle, a search *of* defendant for keys, and a search of defendant's residence and vehicle. The warrant also expressly authorized the police to *seize* defendant. The warrant thus authorized a substantial invasion of defendant's privacy. (*Summers, supra,* 452 U.S. at p. 701.) Interpreting it as precluding defendant's detention and a search of her person at the sheriff's office would not deter illegal police conduct as there was no reasonable probability that another person

or place might be mistakenly searched. (See *Amador, supra,* at p. 392.) Although the search warrant was not particularly well-drafted or precise, a reasonable and "common sense" interpretation of the warrant is that it authorized defendant's detention at the sheriff's office and a search of her person for items listed in the warrant. (See *id.* at p. 393; *People v. Balint* (2006) 138 Cal.App.4th 200, 207 [officer's interpretation of a search warrant must be reasonable].)

###### C.    *Cell Phone Search*

Defendant argues that although the warrant authorized the police to search *for* cellular phones at her home and in her vehicle, the warrant did not authorize a search *of* her cell phone.

In 2014, the United States Supreme Court held that "officers must generally secure a warrant before conducting" searches of "data on cell phones." (*Riley v. California* (2014) 573 U.S. __ [134 S.Ct. 2473, 2485].) However, at the time of the search here in 2012, the California Supreme Court had held that the Fourth Amendment permitted a warrantless search of cell phone data incident to an arrest. (*People v. Diaz* (2011) 51 Cal.4th 84, 93.) Moreover, the search warrant in this case specifically authorized the seizure of any cell phones as well as a search for business records relating to narcotics sales. A reasonable and "common sense" interpretation of the warrant is that it authorized a search of the cell phone found on defendant's person for such business records. (See *Amador, supra,* 24 Cal.4th at p. 393.)

###### D.    *In Camera Review*

Defendant contends the trial court did not follow the procedures for conducting an in camera review of the sealed portion of the search warrant affidavit, as set forth in *Hobbs, supra,* 7 Cal.4th 948.

"When a defendant seeks to quash or traverse a warrant where a portion of the supporting affidavit has been sealed, the relevant materials are to be made available for in camera review by the trial court. (*Hobbs, supra,* 7 Cal.4th at p. 963; see Evid. Code,

11

§ 915, subd. (b).) The court should determine first whether there are sufficient grounds for maintaining the confidentiality of the informant's identity. If so, the court should then determine whether the sealing of the affidavit (or any portion thereof) 'is necessary to avoid revealing the informant's identity.' (*Hobbs, supra,* 7 Cal.4th at p. 972.) Once the affidavit is found to have been properly sealed, the court should proceed to determine 'whether, under the "totality of the circumstances" presented in the search warrant affidavit and the oral testimony, if any, presented to the magistrate, there was "a fair probability" that contraband or evidence of a crime would be found in the place searched pursuant to the warrant' (if the defendant has moved to quash the warrant) or 'whether the defendant's general allegations of material misrepresentations or omissions are supported by the public and sealed portions of the search warrant affidavit, including any testimony offered at the in camera hearing' (if the defendant has moved to traverse the warrant). (*Id.* at pp. 975, 974.)" (*People v. Galland* (2008) 45 Cal.4th 354, 364.)

We have independently reviewed the appellate record, including the transcript of the in camera hearing and the sealed and unsealed portions of the search warrant affidavit. We conclude that the court properly ordered the sealed portion of the transcript to remain sealed to protect the identity of the confidential informant. (*Hobbs, supra,* 7 Cal.4th at pp. 972-973.) In addition, we find that, under the totality of the circumstances presented in the sealed and unsealed portions of the search warrant affidavit, there was a fair probability that contraband or evidence of a crime would be found in the places to be searched pursuant to the warrant. (*Id.* at p. 975.) Last, nothing in the transcript of the in camera hearing or the sealed search warrant affidavit disclosed a basis to suspect that there were any false statements, material misrepresentations, or omissions. (*Id.* at p. 974.)

In sum, based on our review of the record, we conclude the trial court followed the procedures set forth in *Hobbs, supra,* 7 Cal.4th 948 and that it did not err by denying defendant's motion to quash and traverse the warrant.

## IV.    DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.



_____
MIHARA, J.





*People v. Dempsey*
**H042029**