J-S11041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN O. BLENMAN, | : | |
| | : | |
| Appellant | : | No. 802 MDA 2014 |

Appeal from the PCRA Order entered on April 21, 2014
in the Court of Common Pleas of Lebanon County,
Criminal Division, No. CP-38-CR-0000358-2010

BEFORE: PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 19, 2015**

Kevin O. Blenman ("Blenman") appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court thoroughly set forth the relevant factual and procedural history underlying this appeal in its Opinion, which we incorporate herein by reference. ***See*** PCRA Court Opinion, 6/1/14, at 3-7.[1, 2]

On appeal, Blenman presents the following issues for our review:

    I.   Whether trial counsel was ineffective for:

---

[1] On direct appeal, this Court affirmed Blenman's judgment of sentence. ***See Commonwealth v. Blenman***, 48 A.3d 479 (Pa. Super. 2012) (unpublished memorandum). Blenman did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

[2] At trial, Blenman was represented by Nicholas Sidelnik, Esquire (hereinafter referred to as "trial counsel"). Trial counsel also represented Blenman in his direct appeal.

a. Failing to show the video [taken by the arresting officer's dashboard camera] at the pre-trial hearing … to use the video to impeach the officer's testimony[?]

b. Withholding discovery materials from [Blenman] in the form of a video of what happened on the day of [Blenman's] arrest[?]

c. Failing to challenge the reliability of the dog handler and the dog sniff that was conducted[?]

d. Failing to consult with [Blenman] regarding his appeal, thereby creating a deficiency in [Blenman's] appellate brief[?]

e. Failing to properly investigate [a] witness, who ultimately perjured herself during trial[?]

Brief for Appellant at 4 (issues renumbered for ease of disposition, capitalization omitted).

The applicable standards of review regarding the denial of a PCRA petition and ineffectiveness claims are as follows:

> Our standard of review of a PCRA court's denial of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

> * * *

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs.

Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

Blenman first argues that trial counsel was ineffective for failing to show at the pretrial hearing the video of the stop and arrest taken by Trooper Robert Claar's ("Trooper Claar") dashboard camera (hereinafter referred to as "the video"), in order to impeach Trooper Claar's credibility. ***See*** Brief for Appellant at 14-16. According to Blenman, trial counsel should have used the video because there were inconsistencies between it and Trooper Claar's pretrial hearing testimony. ***Id.*** at 15-16.

In its Pa.R.A.P. 1925(a) Opinion, the PCRA court cogently addressed Blenman's ineffectiveness claim, and found that trial counsel had good reason for not showing the video at the pretrial hearing, because to do so would have been a "fruitless venture." ***See*** PCRA Court Opinion, 6/1/14, at 10-12. The PCRA court's determination and rationale are supported by the record, and we therefore affirm on this basis concerning Blenman's first ineffectiveness challenge. ***See id.***

Next, Blenman contends that trial counsel was ineffective for ignoring Blenman's repeated requests to view the video to "assist in his own defense[.]" Brief for Appellant at 8. According to Blenman, he had expressed to trial counsel before the pretrial hearing that he wanted to view the video in order to highlight inconsistencies between it and Trooper Claar's

- 3 -

account of the stop. *Id.* at 8, 9. Blenman asserts that trial counsel did not inform him of the existence of the video until the day before the pretrial hearing, and Blenman did not get to see the video until several months later, after the trial court had denied his Motion to Suppress. *Id.* at 9, 12.

In its Opinion, the PCRA court addressed and rejected Blenman's claim, determining that trial counsel was not ineffective because, *inter alia*, Blenman's viewing of the video prior to the pretrial hearing would not have had any impact on its outcome, or on the outcome of the trial. *See* PCRA Court Opinion, 6/1/14, at 12-14. We agree with the PCRA court's determination and rationale, which is supported by the record, and affirm on this basis with regard to this issue. *See id.*

In his third issue, Blenman argues that trial counsel was ineffective for failing to challenge at trial the reliability of the K-9 dog, Draco, and the dog sniff of his vehicle. *See* Brief for Appellant at 16-18. Blenman contends that the dog sniff was unreliable because Draco failed to alert to a small amount of marijuana that was contained in the vehicle's glove compartment. *Id.* at 17. Additionally, Blenman asserts that trial counsel was ineffective for failing to challenge the qualifications of Draco and his handler, Trooper Claar. *Id.* at 18.

The PCRA court addressed this claim in its Opinion, and determined that trial counsel properly concluded that a challenge to Draco's reliability would have been a "meritless issue" that would have had no impact upon the jury's verdict. *See* PCRA Court Opinion, 6/1/14, at 14-16. We agree

with the PCRA court's determination and rationale, which is supported by the record, and we therefore affirm on this basis with regard to this issue. **See id.**

Next, Blenman asserts that "[t]rial [c]ounsel was ineffective for failing to consult with [Blenman] regarding his [direct] appeal, thereby creating a deficiency in [Blenman's] appellate brief." Brief for Appellant at 18. Blenman maintains that he had specifically requested that trial counsel raise on appeal challenges to (1) the inconsistencies between Trooper Claar's testimony and the video; and (2) the reliability of Draco, which issues trial counsel also failed to raise in his pretrial Motion. **Id.** at 19-21. Additionally, Blenman argues that trial counsel was ineffective for failing to ensure that the search warrant was included in the certified record. **Id.** at 19. Specifically, Blenman points out that, in this Court's Memorandum affirming the judgment of sentence, the majority deemed his challenge to the search warrant waived because this document was not contained in the record. **Id.**

The PCRA court thoroughly addressed Blenman's ineffectiveness challenge in its Opinion, and properly rejected it. **See** PCRA Court Opinion, 6/1/14, at 16-20. We affirm with regard to this issue based on the PCRA

- 5 -

court's sound rationale. *See id.*[3]

Finally, Blenman argues that trial counsel was ineffective for failing to investigate Dominique Reid ("Reid"). Brief for Appellant at 22. Reid testified against Blenman at trial, but subsequently recanted her testimony at the PCRA hearing, asserting that the police and Assistant District Attorney had coerced her to testify falsely against Blenman by threatening to arrest her. *Id.*; *see also id.* at 24-29 (setting forth Reid's testimony at the PCRA hearing). According to Blenman, he had expressed to trial counsel his concern that the police had coerced Reid to write a false statement against him and perjure herself at trial, but trial counsel never investigated Blenman's concerns. *Id.* at 23; *see also id.* at 29 (arguing that "[h]ad [t]rial [c]ounsel zealously investigated [] Reid, he would have discovered that she had a reason for not being truthful during the [t]rial and that her testimony was essentially delivered under duress.").

The PCRA court addressed this claim in its Opinion, and determined that trial counsel was not ineffective because the PCRA court had found Reid's testimony and recantation at the PCRA hearing to be incredible. *See* PCRA Court Opinion, 6/1/14, at 20-23. We agree with the PCRA court's

---

[3] As an addendum, based on our above discussion regarding the purported inconsistencies between Trooper Claar's testimony and the video, the PCRA court properly determined that trial counsel was not ineffective for determining that there was no merit to this issue, and that it did not have a chance of success on direct appeal. As the PCRA court noted in its Opinion, any alleged inconsistencies are "minor," and raising this issue would have been a "fruitless venture." PCRA Court Opinion, 6/1/14, at 12; *see also id.* at 14 (stating that "[trial counsel] did not dwell on these inconsistencies because they would have had no impact on the outcome of the trial.").

determination and rationale, which is supported by the record, and affirm on this basis with regard to Blenman's final issue.  ***See id.***

Because we conclude that the PCRA court neither abused its discretion nor committed an error of law by denying Blenman's first PCRA Petition, we affirm the Order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

IN THE COURT OF COMMON PLEAS LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

KEVIN BLENMAN

NO. CP-38-CR-358-2010

**APPEARANCES**

Jonathan Faust, Esquire       For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Erin Zimmerer, Esquire        For Kevin Blenman
PUBLIC DEFENDER'S OFFICE

## OPINION BY CHARLES, J., June 27, 2014

Following a Jury Trial, Kevin Blenman (hereafter "DEFENDANT") was convicted of several drug-related offenses. His charges originated from a canine sniff and subsequent search of his vehicle, from which police recovered over seven pounds of marijuana. DEFENDANT filed a Petition for Post-Conviction Relief on October 2, 2013, alleging several claims of ineffective assistance of counsel against his Trial attorney, Nicholas Sidelnik (hereafter "TRIAL COUNSEL"). Because we find today that the issues DEFENDANT raised would have had no impact on the

2

outcome of his Trial, we affirm our decision of April 21, 2014 to deny his PCRA Petition.

## I.    FACTS

On February 5, 2010, Trooper Robert W. Claar of the Pennsylvania State Police stopped a vehicle driven by DEFENDANT for failure to display a registration sticker. After DEFENDANT rolled down his window, Trooper Claar noticed the smell of burnt marijuana emanating from the vehicle. Trooper Claar explained the reason for the stop and indicated to DEFENDANT that he was driving without displaying a registration sticker or temporary paper registration. DEFENDANT informed Trooper Claar that he had a temporary paper registration on the back window. Upon a close-up inspection and removal of dirt from the window, Trooper Claar could see the registration through the window. DEFENDANT explained that his windows were tinted, and that it is difficult to see the tag.

A criminal history check on DEFENDANT revealed that he had been previously charged three times with Possession with Intent to Deliver. DEFENDANT also had an active bench warrant issued for his arrest at the time of the traffic stop, and he was driving with a suspended and expired license. Trooper Claar asked DEFENDANT to step out of the vehicle. Once DEFENDANT was out of the vehicle, Trooper Claar questioned him on his whereabouts and whether there were any guns in the car. DEFENDANT stated that there was not a gun in the vehicle. Trooper Claar

3

then asked DEFENDANT if there was cocaine in the vehicle. DEFENDANT stated that there was not. When questioned about the marijuana smell, DEFENDANT informed him that he and his passenger, Dominique Reid (hereafter "REID"), had just finished smoking marijuana prior to the traffic stop. He explained that he and REID were coming home from visiting a friend in Philadelphia.

After DEFENDANT denied consent to a search of his vehicle, Trooper Claar informed him that he was going to deploy his State Police Drug Detection (hereafter "SPDD") dog in the vehicle. DEFENDANT then admitted that he frequently makes "runs" to Philadelphia for people. He explained that he was coming home from one of these "runs", but he did not know what was in his vehicle.

State Police Detection dog Draco was deployed to sniff the vehicle.[1] DRACO alerted the officer of the presence of drugs while he was outside of the vehicle, and again when he was inside of the vehicle. He alerted to a red cooler and small suitcase in the rear of the vehicle. DEFENDANT was arrested for the bench warrant and his vehicle was impounded. Trooper Claar applied for and was issued a search warrant to search DEFENDANT's vehicle. During the search, seven gallon zip lock bags full of marijuana totaling 7.3 pounds were found in a duffle bag located in the cooler. An additional 10 grams of marijuana were found in the glove box.

Based upon these findings, DEFENDANT was charged as follows:

---

[1] DRACO is a canine certified in the detection of the odor of marijuana/hashish, cocaine hydrochloride/cocaine base, heroine hydrochloride, and d, l-methamphetamine hydrochloride. DRACO has been a certified team member since July 1, 2008.

4

Count I: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act – Possession with Intent to Deliver Marijuana [2]

Count II: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act – Possession of Marijuana[3]

Count III: Violation of the Controlled Substance, Drug, Device, and Cosmetic Act – Possession of Drug Paraphernalia[4]

On May 14, 2010, DEFENDANT filed an Omnibus Pre-Trial Motion to Suppress Evidence and Dismiss Charges, challenging the constitutionality of the admission of the following evidence:

(1) The evidence obtained via the traffic stop;

(2) Statements made by DEFENDANT while subject to a custodial interrogation;

(3) Evidence obtained via the canine search of his vehicle; and

(4) Evidence seized from his vehicle.

We denied all but one of DEFENDANT's Motions on September 1, 2010 – we granted DEFENDANT's Motion to Suppress the statements he made while subject to a custodial interrogation.

---

[2] 35 Pa.C.S.A. § 780-113(a)(30).
[3] 35 Pa.C.S.A. § 780-113(a)(16).
[4] 35 Pa.C.S.A. § 780-113(a)(32).

5

DEFENDANT's case was submitted for a jury trial on November 2, 2010. At trial, the Commonwealth called five witnesses. After roughly one and one-half hours of deliberation, the jury returned verdicts of guilty on all three charges. Because a dispute existed with respect to the amount of marijuana possessed by the Defendant for purposes of Counts 1 and 2 (N.T. 11/2/2010 p. 8), we submitted a special interrogatory with respect to Counts 1 and 2. That interrogatory read:

> If you find the Defendant guilty of Count (1) [2], do you find beyond a reasonable doubt that the amount of marijuana possessed by the Defendant was between one pound[5] and ten pounds?

> _____                    _____
>     (Yes)                              (No)

The jury responded "yes" to this special interrogatory with respect to both counts.

DEFENDANT was brought before us for sentencing on December 29, 2010. At that time, we noted the extensive amount of marijuana possessed by DEFENDANT, and we noted DEFENDANT's prior criminal history that included multiple drug offenses. In addition, we were advised by the Commonwealth that it sought to apply a drug weight mandatory of two years on Count 1. After consideration of everything, we imposed a sentence on Count 1 of 2 years to 6 six years in a state correctional

---

[5] We selected the one pound to ten pound amounts for the special interrogatory because those amounts control the offense gravity score of Count 1. Under Pennsylvania's Sentencing Guidelines, the offense gravity score for Possession of Marijuana between one and ten pounds is a five, while the offense gravity score for Possession of Marijuana under one pound is a three. (N.T. 8). The special interrogatory was not designed to address mandatory sentencing provisions.

6

facility. We declared that Count 2 should merge with Count 1. We imposed a consecutive 6 month to 1 year sentence on Count 3. Thus, the aggregate sentence we imposed was 2 ½ to 7 years.

Following sentencing, DEFENDANT filed timely Post-Sentence Motions, which we denied in an 11-page Opinion dated March 18, 2011. DEFENDANT filed a *pro-se* Post-Conviction Relief Act Petition on April 8, 2013, and an Amended Petition on October 2, 2013. Therein, DEFENDANT argued that he was denied his Constitutional right to effective assistance of counsel during his proceedings. We conducted a Hearing on all but one of DEFEDANT's Post-Conviction issues on October 18, 2013. Because DEFENDANT failed to timely notify the Commonwealth of a witness prior to his Hearing, we continued the conclusion of the Hearing to April 21, 2014 in order to afford the Commonwealth time to investigate and rebut DEFENDANT's untimely claim.

Following the conclusion of the Hearing on April 21, 2014, we issued an Order denying DEFENDANT's Petition for Post-Conviction Relief. DEFENDANT filed a timely appeal to the Superior Court on May 8, 2014. We author today's Opinion to further explain our rationale in denying DEFENDANT's Petition for Post-Conviction Relief.

7

## II. DISCUSSION

### A. The Post-Conviction Relief Act

The Post-Conviction Relief Act (hereafter "PCRA") provides a process by which persons convicted of crimes they did not commit and persons serving illegal sentences can obtain relief. 42 Pa.C.S.A. § 9542. The PCRA is the exclusive method by which collateral relief may be obtained in Pennsylvania. *Commonwealth v. Chester*, 733 A.2d 1242, 1250 (Pa. 1999). To be eligible for relief, a PCRA defendant must prove the following elements by a preponderance of evidence:

(1) That he has been convicted of a crime under the laws of this Commonwealth and that he is serving a sentence for that crime;

(2) That the conviction resulted from one of the enumerated errors listed in § 9543(a)(2) of the PCRA;

(3) That the allegation of error has not previously been litigated or waived; and

(4) That any failure to litigate the issue previously was not the result of a rational, strategic, or tactical decision by the Defendant or his counsel.

See 42 Pa.C.S.A. § 9543.

When a claim of ineffective assistance of counsel is raised, additional principles apply. Trial counsel is presumed to be effective, and the Defendant bears the burden of proving otherwise. *Commonwealth v. Lewis*, 708 A.2d 497, 500 (Pa.Super. 1998); *Commonwealth v. Williams*,

8

570 A.2d 75, 81 (Pa. 1990). In determining whether counsel rendered ineffective assistance, the Court must first determine whether the issue underlying the claim of ineffectiveness has even arguable merit. *Commonwealth v. DiNicola*, 751 A.2d 197, 198 (Pa.Super. 2000); *Commonwealth v. Johnson*, 588 A.2d 1303, 1305 (Pa. 1991). If the claim is without arguable merit, the Court's inquiry ends, as counsel will not be deemed ineffective for failing to pursue a meritless issue. *Id.* Even if the underlying claim is of arguable merit, the Defendant must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the Defendant's interest. *Id.* In addition, the Defendant must also establish that but for counsel's deficient performance, the result of the trial would have been different. *Id.*

DEFENDANT's Amended PCRA Petition alleged the following four errors of TRIAL COUNSEL:

1. TRIAL COUNSEL failed to introduce the traffic stop video at the Pre-Trial Hearing to impeach the testimony of the officer;

2. TRIAL COUNSEL withheld discovery materials from DEFENDANT by failing to show him the video of the traffic stop;

3. TRIAL COUNSEL failed to challenge the reliability of the drug sniffing dog, Draco; and

9

4. TRIAL COUNSEL failed to consult with DEFENDANT regarding his appeal.

DEFENDANT alleged an additional ground for relief under the Act:

5. That witness REID disavowed her trial testimony and acknowledged that she lied at trial.

We conducted two separate factual Hearings on DEFENDANT's Petition. For the reasons that follow, we conclude that our decision to deny DEFENDANT relief under the Post-Conviction Relief Act was the right one.

## 1. Failure to Introduce the Traffic Stop Video at the Pre-Trial Hearing

DEFENDANT argues that TRIAL COUNSEL provided him with ineffective assistance because he failed to introduce the traffic stop video at the Pre-Trial Hearing. DEFENDANT explains that he did not actually see the traffic stop video until August of 2010. When he finally viewed the video, he noticed that there were several inconsistencies between the officer's testimony and what was depicted in the traffic stop video. He explains that TRIAL COUNSEL should have raised these

10

inconsistencies at the Pre-Trial Hearing to impeach the testimony of the officer.

We initially note that the traffic stop video was provided to the Court for review and was admitted as Exhibit 1 to the Pre-Trial Hearing. N.T. 6/16/2010 p. 23. This Court was therefore able to thoroughly review the video and the Hearing testimony before rendering our decision to deny DEFENDANT's Motion to Suppress the evidence seized from his vehicle. We conclude therefore that the fact that the video of the traffic stop was not actually physically shown at the Pre-Trial Hearing had no bearing on the outcome of that Pre-Trial Hearing.

DEFENDANT hangs his hat on an alleged minor inconsistency in Trooper Claar's testimony compared to what is depicted in the traffic stop video. Trooper Claar testified that Draco alerted him to the presence of drugs in a red cooler in the rear of the vehicle. When asked how he knew that Draco was alerting to the presence of drugs in the red cooler, Trooper Claar testified that he saw Draco through the window from behind the vehicle. However, the video shows that Trooper Claar never walked behind the vehicle, and instead remained at the side of the vehicle. DEFENDANT argues that Trooper Claar could not have seen what Draco was alerting him to from his vantage point. He explains that TRIAL COUNSEL should have raised this issue at the Pre-Trial Hearing.

Assuming *arguendo* that Trooper Claar was unable to see Draco inside the vehicle from his vantage point, sufficient evidence existed

11

independent of Trooper Claar visually observing Draco within the vehicle to create probable cause:

(1)  Trooper Claar noted that he detected the odor of burnt marijuana coming from the DEFENDANT's vehicle when he approached the window.

(2)  Trooper Claar conducted a criminal history check of DEFENDANT which revealed that DEFENDANT had been previously charged three times with Possession with Intent to Deliver.

(3)  DRACO was deployed on the exterior of the vehicle and was alerted to the open driver's door. While inside of the vehicle, Draco hopped to the back seat of the vehicle and continued to bark and alert Trooper Claar to the presence of marijuana.

Based on this evidence alone, it is clear that the Magistrate had a substantial basis for concluding that probable cause existed to search DEFENDANT's vehicle. TRIAL COUNSEL showing the video at the Hearing and pressing Trooper Claar on a minor inconsistency in his testimony would have therefore been a fruitless venture. As such, we cannot find TRIAL COUNSEL ineffective for failing to introduce the video at the Hearing.

### 2. Withholding of Discovery Materials from DEFENDANT

DEFENDANT further insists that TRIAL COUNSEL should have reviewed the traffic stop video with him prior to the Pre-Trial Hearing so

12

that DEFENDANT could have searched for inconsistencies in the video. DEFENDANT wanted to be aware of what was going to be shown to the Court via the traffic stop video so that he could offer help to his counsel in order to question Trooper Claar. N.T. 10/18/2013 p. 4. For instance, as described above, he sought to impeach the testimony of Trooper Claar by pointing out minor inconsistencies between the video and Trooper Claar's testimony. N.T. 10/18/2013 p. 12. He believes that if he would have been able to view the video before the Pre-Trial Hearing, it would have helped him prepare his defense. N.T. 10/18/2013 p. 11.

The fact that TRIAL COUNSEL did not show DEFENDANT the video of the traffic stop similarly had no bearing on this Court's decision with respect to the Pre-Trial issue, nor did it have any bearing with respect to the presentation of evidence at trial. DEFENDANT identified minor discrepancies between the video and the officer's testimony that he sought to discuss with TRIAL COUNSEL and raise during the Pre-Trial Hearing. The fact that Trooper Claar observed Draco identify the presence of drugs from the side of the vehicle rather than the back of the vehicle as he testified is not significant enough to discredit his testimony. It is clear from the video that Draco first detected the odor of marijuana from outside the vehicle; he began barking and jumping around. After Draco jumped in the driver's side door on his own, he continued to bark and alert to the presence of marijuana. Trooper Claar testified that he could see Draco alerting to the red cooler in the back of the car.

13

TRIAL COUNSEL had a chance to fully review the traffic stop video. N.T. 10/18/2013 p. 47. TRIAL COUNSEL also discussed with DEFENDANT his recollection of what occurred at the traffic stop. TRIAL COUNSEL heard the testimony of Trooper Claar and his recollection of the drug sniff, and he then cross-examined him on his actions during the drug sniff (*See* N.T. 6/16/2010 pp. 23-36). This Court was then able to review the video in light of the Hearing testimony. We were unable to discern any glaring discrepancies between the Hearing testimony and the video that TRIAL COUNSEL had missed.

It is clear that TRIAL COUNSEL was fully aware of the minor inconsistencies between the video and Trooper Claar's testimony to which DEFENDANT refers in his PCRA Petition. It is also clear that he did not dwell on these inconsistencies because they would have had no impact on the outcome of the trial. More than enough evidence existed to establish probable cause to search DEFENDANT's vehicle, and we are confident that DEFENDANT's screening of the video prior to Trial would have had no impact on its outcome. As such, we cannot conclude that TRIAL COUNSEL was ineffective for failing to show DEFENDANT the traffic stop video prior to Trial.

### 3. Failure to Challenge the Reliability of Draco

DEFENDANT next claims that TRIAL COUNSEL failed to challenge the reliability of the drug dog, Draco. DEFENDANT's sole argument

14

regarding the reliability of Draco is that he never alerted on the glove compartment even though there were drugs inside. N.T. 10/18/2013 p. 25. DEFENDANT therefore argues that Draco could not be reliable. He submits that TRIAL COUNSEL should have challenged the reliability of Draco at Trial.

At the Pre-Trial Hearing, Trooper Claar testified to the training and certification of Draco as a drug detection dog. Draco is certified in the detection of the odor of marijuana/hashish, cocaine hydrochloride/cocaine base, heroine hydrochloride, and d, l-methamphetamine hydrochloride. N.T. 6/16/2010 p. 13. Draco has been a certified team member since July 1, 2008.

DEFENDANT expected TRIAL COUNSEL to call into question Draco's reliability at Trial because Draco never alerted on the drugs in the glove compartment. TRIAL COUNSEL reminded us at DEFENDANT's first PCRA Hearing that seven and one-half pounds of marijuana were located in the red cooler that Draco hit upon, while only a very small amount of marijuana was located in the glove compartment. He explained that it was not surprising that Draco chose to alert to the cooler rather than the glove compartment. Because of this, he concluded that a challenge to Draco's reliability would have been a meritless issue in this case. N.T. 10/18/2013 pp. 49-50.

15

We follow the logic of TRIAL COUNSEL and conclude that Draco's decision to hit upon the large amount of marijuana in the cooler instead of the small amount of marijuana in the glove compartment is not evidence that Draco's drug sniff was unreliable. Trooper Claar testified to Draco's credentials and capabilities as a drug sniffing dog. The traffic stop video clearly shows Draco sniffing around the outside of the vehicle and alerting to the smell of marijuana before he jumps inside the vehicle. Trooper Claar testified at trial that he could see Draco inside the vehicle sniffing the red cooler and alerting him to the presence of a large amount of drugs therein. We are confident that a challenge to Draco's reliability in light of these facts would have failed. Because a challenge to Draco's reliability would have had no impact on DEFENDANT's verdict at Trial, we do not find TRIAL COUNSEL ineffective for choosing not to pursue this argument.

## 4. Failure to Consult with DEFENDANT Regarding His Appeal

DEFENDANT next explains that TRIAL COUNSEL failed to discuss and pursue all issues with him that he wished to raise on appeal. Specifically, DEFENDANT alleges that TRIAL COUNSEL did not discuss the reliability of Draco with DEFENDANT, and did not challenge the dog's reliability on appeal. N.T. 10/18/2013 p. 14. TRIAL COUNSEL further failed to address the inconsistency of the officer's testimony with the traffic stop video on appeal. N.T. 10/18/2013 p. 15. DEFENDANT claims

16

that he told TRIAL COUNSEL that he wanted to appeal these issues, but he failed to do so. N.T. 10/18/2013 p. 17.

TRIAL COUNSEL testified that he met with DEFENDANT prior to his sentencing to discuss the issues he wanted to raise on appeal. N.T. 10/18/2013 p. 50. He explained that he included each of the issues DEFENDANT requested for him to appeal. N.T. 10/18/2013 p. 51. He explained that DEFENDANT referenced the reliability of Draco's drug sniff, but his request was vague and TRIAL COUNSEL was not sure what exactly DEFENDANT wanted to appeal. He testified that he "felt that [the] issue was tied to the drug sniff, not the actual search of the interior of the vehicle." N.T. 10/18/2013 p. 50. Since he concluded that a challenge to Draco's reliability would have been meritless, he did not include this issue in the appeal.

Central to a claim of ineffective assistance of counsel under the PCRA is an attorney's failure to pursue a meritorious issue that would have likely affected the outcome of a Defendant's trial. Conversely, counsel cannot be deemed ineffective for failing to pursue a meritless issue. As discussed above, an attack on Draco's reliability under the circumstances of this case would likely have not affected the outcome of DEFENDANT's trial. TRIAL COUNSEL therefore cannot be deemed ineffective for failing to pursue this meritless argument.

17

DEFENDANT also explains that the two-Judge majority of the Superior Court panel deemed his challenge to the Search Warrant waived because the Search Warrant itself was not part of the record. DEFENDANT references the Superior Court's Opinion of April 17, 2012 that affirms DEFENDANT's sentence. Because of this, DEFENDANT suggests that TRIAL COUNSEL was ineffective for failing to ensure that the Search Warrant was part of the record.

In Judge Bowes' Concurring Statement, she opined that the validity of the warrant could have been determined based upon the transcripts of the suppression hearing contained in the certified record. She explained, therefore, that the Search Warrant itself did not have to be a part of the record for the Superior Court to rule on the issue. Judge Bowes reasoned:

> The warrant is sound because the evidence adduced at that proceeding confirms that the vehicular stop was legal, reasonable suspicion to order the canine sniff was present, and the canine alerted to the presence of drugs while it was located outside the vehicle. Thus, even if the interior alert was used to sustain the warrant and that alert was constitutionally infirm, the warrant itself remained lawful due to the exterior alert. Based on the transcript in the record, we are able to discern that there was sufficient untainted information to support a finding of probable cause and render

18

the warrant acceptable. Not agreeing with the majority's finding of waiver, I concur.

Concurring Statement, 4/17/2012, p. 3.

We incorporate this legal analysis undertaken by Judge Bowes into our Opinion. We find that ample evidence exists in the record to support a finding that probable cause existed at the time of the search. The record indicates that while Trooper Claar was speaking with DEFENDANT, he detected the odor of burnt marijuana coming from the vehicle. N.T. 6/16/2010 p. 7. This alone gave Trooper Claar reasonable suspicion to deploy Draco. *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa.Super. 2008) (reasonable suspicion present when police smell odor of drugs); *Commonwealth v. Rogers*, 849 A.2d 1185, 1191 (Pa. 2004) (to support canine sniff of a place, including vehicle, police must possess reasonable suspicion). This reasonable suspicion became probable cause when Draco performed an exterior sniff of the vehicle and alerted to the marijuana (N.T. 6/16/2010 p. 13) (*Commonwealth v. Hernandez*, 935 A.2d 1275, 1285 (Pa. 2007) ("the law is clear that once a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens to probable cause")).

Even had the Search Warrant itself been appended to DEFENDANT's Appeal, the Superior Court's decision to affirm his Sentence would not have changed. The Search Warrant states that

19

Trooper Claar pulled DEFENDANT over pursuant to a perceived traffic violation. Trooper Claar then smelled the odor of burnt marijuana coming from the vehicle. Thereafter, Draco performed an exterior sniff of the vehicle and alerted to the presence of marijuana. Had the Superior Court received the actual Search Warrant with the Record, they would have found these facts within and would have concluded that Trooper Claar had probable cause to search the vehicle.

TRIAL COUNSEL clearly consulted with DEFENDANT regarding his appeal, and DEFENDANT has not identified any meritorious issues that TRIAL COUNSEL failed to raise on appeal. We therefore cannot find that TRIAL COUNSEL gave ineffective assistance during DEFENDANT's appeal process.

## 5. Trial Testimony of Dominique Reid

Finally, DEFENDANT argues that he is entitled to Post-Conviction Relief because trial witness REID recanted her testimony, explaining that she was "coerced" into testifying against DEFENDANT.[6] Since we found that her testimony at the October 18, 2013 PCRA Hearing was not credible, we find that DEFENDANT is not entitled to relief under the PCRA on this ground.

---

[6] Notice regarding Ms. REID's change of testimony was not provided to the Commonwealth until less than two weeks before the first PCRA Hearing. Because notice of this issue was not timely provided to the Commonwealth and because the Commonwealth has not had the opportunity to subpoena necessary witnesses to rebut REID's testimony, we continued the PCRA Hearing until April 21, 2014 in order to afford the Commonwealth time to procure witnesses.

20

REID testified against DEFENDANT during trial, explaining that she did not know that the red cooler full of marijuana was in the vehicle. She explained that there was a period of thirty minutes to an hour where DEFENDANT left her at his cousin's house in Philadelphia. N.T. 11/2/2010 pp. 34-35. REID explained that she did not know where DEFENDANT went during the time that she was at his cousin's house. This testimony created a window of time during which DEFENDANT could have obtained the red cooler full of marijuana because his whereabouts were unknown to REID. REID also prepared a written statement prior to Trial at the Commonwealth's request memorializing this information.

However, at the October 18, 2013 PCRA Hearing, REID explained that her trial testimony was coerced and that DEFENDANT never left her at his cousin's house. She insists that she and DEFENDANT were together during their entire trip to Philadelphia. Since REID indicated at Trial that the vehicle they were driving belonged to DEFENDANT's girlfriend, Aigner London (N.T. 11/2/2010 p. 38), this created the possibility that the red cooler full of marijuana belonged to DEFENDANT's girlfriend and not DEFENDANT.

REID explained that she lied at trial because she felt "intimidated" during her interview with the police and Attorney McAteer of the Lebanon County District Attorney's Office. N.T. 10/18/2013 p. 31. She proclaimed that Attorney McAteer and the officers told her they were going to "lock her up" if she didn't testify that DEFENDANT left her at his

21

cousin's house for a brief period of time during their trip. N.T. 10/18/2013 p. 31. They told her that she "wouldn't be able to go to school". Her testimony at DEFENDANT's PCRA Hearing was that she was with DEFENDANT during the entire trip, and she did not see him place the red cooler full of marijuana in the vehicle. She explained that she felt she could not tell the truth at DEFENDANT's jury trial because she was afraid that she was going to "get locked up" that day. N.T. 10/18/2013 p. 36.

We do not find REID's attempt to recant her testimony to be credible for several reasons. We initially note that REID provided Trial testimony on November 2, 2010, and waited until now to recant her testimony. It is also obvious to this Court that REID has a motive to assist DEFENDANT. She indicated in her testimony, "I have love for the DEFENDANT," "I do not want him to be in jail," and "I pray that he comes home." N.T. 10/18/2013 pp. 44-45. We also note that throughout the Hearing on October 15, 2013, REID sat in the courtroom with friends and family members who obviously supported DEFENDANT.

Further, considerable testimony was presented from Trooper Claar and Attorney McAteer that REID was not in any way threatened or intimated when she met with police prior to her Trial testimony. In fact, Attorney McAteer indicated that REID was accompanied by her father and was extremely cooperative at all times during her meetings at the District Attorney's office. He explained that he would never threaten a

witness to elicit testimony, and that REED was not in any way reluctant to provide him with information. N.T. 4/21/2014 pp. 14-15.

Ultimately, we find Attorney McAteer's testimony to be credible. At the PCRA Hearing, it was clear to us that REID was simply attempting to help her friend instead of tell the truth. REID testified under oath in 2010 to information she knew at the time to be accurate, and any attempt by REID to disavow such testimony years later is simply not credible. As such, we will not grant DEFENDANT's PCRA on these grounds.

## III.  CONCLUSION

It is clear to us that DEFENDANT's appeal should be denied for several reasons. First, since the traffic stop video was provided to the Court for review and was admitted as Exhibit 1 to the Pre-Trial Hearing, introducing and cross-examining the video at the Hearing would not have impacted the outcome of DEFENDANT's Suppression Hearing because this Court was able to review the video and observe the interaction between DEFENDANT and Trooper Claar, as well as the subsequent drug sniff. We concluded – and still conclude today – that the drug sniff was based on a reasonable suspicion, and the subsequent search of DEFENDANT's vehicle was based on probable cause. As such, TRIAL COUNSEL should not be deemed ineffective for choosing not to introduce the video at the Hearing.

23

Next, we fail to see how showing DEFENDANT the video before the Hearing and Trial would have impacted his case. DEFENDANT argues that he could have pointed out certain observations to TRIAL COUNSEL and could have helped him prepare a defense, but after viewing the video, this Court is not aware of any "observations" that TRIAL COUNSEL failed to raise at the Pre-Trial Hearing and at Trial that would have had any arguable merit. We therefore find that TRIAL COUNSEL was not ineffective for failing to show DEFENDANT the video prior to the Pre-Trial Hearing.

Next, DEFENDANT's argument that Draco is unreliable because he failed to hit on the marijuana in the glove compartment is meritless. Trooper Claar testified to Draco's credentials and capabilities as a drug sniffing dog. The traffic stop video clearly shows Draco sniffing around the outside of the vehicle and alerting to the smell of marijuana before he jumps inside the vehicle. When he jumped inside the vehicle, Draco not surprisingly chose to alert Trooper Claar to the seven pounds of marijuana in the red cooler, rather than the small amount in the glove compartment. We are confident that a challenge to Draco's reliability would have failed. As such, we find that TRIAL COUNSEL was not effective for failing to challenge Draco's reliability in this regard.

Next, we find that TRIAL COUNSEL adequately represented DEFENDANT throughout his appeal. TRIAL COUNSEL and DEFENDANT both testified that they met to discuss the issues DEFENDANT wished to

24

raise on appeal. DEFENDANT is simply unhappy because TRIAL COUNSEL refused to appeal the meritless issues of Draco's reliability and the discrepancy between Trooper Claar's testimony compared to the video. We cannot find TRIAL COUNSEL ineffective for choosing not to pursue a meritless argument on appeal.

Finally, we find that the PCRA testimony of REID is not credible, and we find the PCRA testimony of Attorney McAteer to be credible. It is clear that REID had a motive to recant her testimony. Further, REID waited at least 2 and a half years to come forth and claim that she lied at Trial. We find that REID was not intimidated or coerced when she wrote her statement to police, nor was she threatened or coerced when she testified against DEFENDANT at trial. As such, DEFENDANT's argument must fail.

In sum, we reject Defendant's arguments and conclude that Defendant's appeal should be denied. A Court Order will be entered on today's date to transmit Defendant's file to the Superior Court for their review.

25