J. S69028/14
**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     : PENNSYLVANIA
              v. :

JONATHAN PENA, : No. 3600 EDA 2013
                                 :
         Appellant :

Appeal from the PCRA Order, December 6, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-1207661-2003

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND STABILE, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.       **FILED MARCH 04, 2015**

Appellant appeals the order denying and dismissing his second petition brought pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Finding no error, we affirm.

On August 8, 2005, following bench trial, appellant was found guilty of first degree murder and related weapons offenses.  On that same date, appellant was sentenced to an aggregate term of life imprisonment. Appellant's convictions arose from a shooting outside of Philly Champs Bar in Philadelphia on November 4, 2003.  Appellant was engaged in a pool tournament when he became embroiled in an argument with the victim.  The two men went outside, supposedly for a fistfight, but appellant instead drew a gun and shot the victim to death.

Appellant filed a notice of appeal on December 20, 2005, which this court quashed on August 3, 2007 as untimely. *Commonwealth v. Pena*, 935 A.2d 19 (Pa.Super. 2007) (unpublished memorandum). Appellant filed his first PCRA petition on May 12, 2008. On September 26, 2008, the PCRA court restored appellant's direct appeal rights *nunc pro tunc*. On June 14, 2010, this court affirmed the judgment of sentence, and on December 7, 2010, our supreme court denied appeal. *Commonwealth v. Pena*, 4 A.3d 684 (Pa.Super. 2010) (unpublished memorandum), *appeal denied*, 13 A.3d 477 (Pa. 2010).

Appellant filed the instant PCRA petition on February 11, 2011. Counsel was appointed and amended petitions were filed. On November 8, 2013, the PCRA court issued notice of its intention to dismiss the petition without hearing, pursuant to Pa.R.Crim.P., Rule 907, 42 Pa.C.S.A. On December 6, 2013, the PCRA court entered an order dismissing the petition and denying relief. This timely appeal followed.

Appellant raises the following issues on appeal:

> I. Did the trial court err when it denied the appellant post-conviction relief in the form of a new trial based on the ineffectiveness of trial counsel in the absence of an evidentiary hearing?
>
>> A. Did trial counsel fail to meet with the appellant prior to trial to prepare his defense?
>>
>> B. Did trial counsel fail to move for a mistrial after hearsay testimony

was presented identifying him as the assailant?

C. Did trial counsel fail to secure the surveillance video showing the incident?

D. Did trial counsel fail to interview Louie Ortiz, a/k/a Jose Ortiz, and present him as a witness at trial?

Appellant's brief at 4.

Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa.Super. 2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

Moreover, as most of appellant's issues on appeal are stated in terms of ineffective assistance of counsel, we also note that appellant is required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). The failure to satisfy any prong of this test will cause the entire claim to fail. *Commonwealth v. Daniels*, 947 A.2d 795, 798 (Pa.Super. 2008). Finally, counsel is presumed

to be effective, and appellant has the burden of proving otherwise. ***Commonwealth v. Pond***, 846 A.2d 699, 708 (Pa.Super. 2003).

We first address appellant's contention that the PCRA court erred in not conducting an evidentiary hearing.

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa.Super.2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. ***Id.*** It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. ***Commonwealth v. Hardcastle***, 549 Pa. 450, 454, 701 A.2d 541, 542-543 (1997).

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa.Super. 2012), quoting ***Commonwealth v. Turetsky***, 925 A.2d 876, 882 (Pa.Super. 2007), ***appeal denied***, 940 A.2d 365 (Pa. 2007).

Appellant's issues pertain to instances of ineffective assistance of counsel. Where the issue concerns ineffective assistance of counsel, an evidentiary hearing is usually necessary only to determine if counsel's failure to act was an oversight or some kind of tactical decision. The other two prongs of the test for ineffectiveness, underlying merit of the claim and prejudice to the defendant, can usually be determined from the record. Because an appellant must prove all three prongs, the failure to prove a

single prong results in a finding of no ineffectiveness. Thus, an evidentiary hearing need not be held where it can be determined from the record that the underlying claim has no merit or that there has been no prejudice to appellant. That is the situation here and we find no error in failing to hold an additional evidentiary hearing.

In his first claim of trial counsel's ineffectiveness, appellant contends that trial counsel was ineffective in failing to meet with him before trial. Appellant's issue is more than a claim that counsel failed to adequately consult with him and prepare for trial; appellant asserts that counsel did not meet with him at all prior to trial. As proof of same, appellant attached to his PCRA petition a copy of the jail's visitor log while he was incarcerated. On appeal, appellant cites the following:

> Finally, it is also clear that Appellant was prejudiced by Mr. Turner's failure to meet with him in person prior to trial. *See id.* As we have highlighted above, in order to prepare a defense to a charge of murder in the first degree, it is essential that at the very least, counsel meet with his client in person to, *inter alia*, gather information from the client, evaluate the client's demeanor, and try to establish a working relationship.

*Commonwealth v. Brooks*, 839 A.2d 245, 250 (Pa. 2003). We need not address *Brooks* because we find, as did the PCRA court, that the record belies appellant's assertion that counsel never met with him.

First, appellant's stepfather testified at trial that he and appellant went to trial counsel's office before surrendering to police to discuss his options. (Notes of testimony, 3/2/05 at 163-164.)

Second, when the court conducted its colloquy of appellant about his decision not to testify, the following statements were adduced:

> THE COURT: You understand that you have the right to testify during the course of your trial if you so desire. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that that is your right and your right alone?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had the opportunity to speak with your lawyer about whether or not you will testify in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you reached a decision as to whether or not you wish to testify in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What is that decision?
>
> THE WITNESS: I'm not going to testify.
>
> THE COURT: Has anyone forced you, threatened you or in any other way precluded you from testifying, even though you wanted to?
>
> THE WITNESS: No.

> THE COURT: You understand, then, that the fact that you have not testified cannot and will not be held against you by this Court. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Your counsel has indicated that he intends to rest the defense of this case. Are there any witnesses that [you] wanted to have presented or any other evidence that you wanted to have introduced that has not been introduced or witnesses that have not been called during the course of this trial?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Are you satisfied, then, with the representation of your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.

Notes of testimony, 3/2/05 at 227-228. Clearly, this testimony indicates that counsel and appellant conferred as to whether appellant should testify. Moreover, appellant voiced his satisfaction with counsel's representation. This obviously contradicts appellant's complaint that counsel had never once met with him to discuss his case.

Third, appellant's trial counsel stated, before commencing his closing argument, that he had discussed his trial strategy with appellant. (*Id.* at 231-233.) Counsel's first strategy was to attack the identification of appellant as the perpetrator, and if the court believed that appellant was the assailant, that no evidence of premeditation existed. (*Id.*) The court then asked appellant if he agreed with counsel's strategy and appellant answered

affirmatively and also stated that he had nothing to say or add. (*Id.* at 234-235.)

It is quite clear from the record evidence that counsel met with appellant at some point, but possibly not while he was incarcerated, to prepare for trial. We do not think the PCRA court needed to hold an evidentiary hearing where appellant would undoubtedly be impeached with his declaration of satisfaction with counsel's representation. There is no error here.

Appellant next argues that counsel was ineffective in failing to request a mistrial after hearsay evidence was introduced that identified appellant as the assailant. Appellant is referring to the testimony of Jamar Headen who was an eyewitness to the shooting. Headen was a regular customer at the bar as were appellant and his brother Lou. Headen had seen the brothers in the bar several times before. On the night of the shooting, Headen was introduced to appellant's brother. When later questioned by police Headen wasn't sure of the assailant's name but suggested it might be "Lou." Headen also identified the shooter as having certain tattoos. Lou is the individual that has the tattoos, not appellant. Nonetheless, Headen consistently identified appellant as the shooter both at trial and when detectives showed him a photo array during their investigation.

During cross-examination by appellant's trial counsel, counsel was inquiring how Headen knew appellant's father was also in the bar that night, when he earlier stated that he did not know the father:

> Q. [Defense counsel] So that you're basing that on what other people told you?
>
> A. [Headen] On his [appellant's] girlfriend, yeah.
>
> Q. Did you ever mention Lou's name to the girlfriend?
>
> A. She the one told me it was John.
>
> Q. That's not my question to you, Sir. Let me repeat it for you. Did you ever mention Lou's name to the girlfriend?
>
> A. I don't remember. I don't want to say yeah.
>
> Q. She told you that down in Homicide, right, that John did it, right?
>
> A. Yeah.

*Id.* at 138.

From this exchange, appellant cobbles together an argument that Headen's identification was based upon hearsay information supplied by appellant's girlfriend and that counsel should have moved for a mistrial. To the extent that appellant is complaining that Headen's identification was based not upon personal observation but upon information from appellant's girlfriend, we find that not to be the case. The girlfriend did not identify to Headen who the shooter was, but rather merely clarified for Headen what was the actual name of the person Headen had observed committing the

murder. This is more apparent in an earlier exchange between Headen and defense counsel:

> Q. Who you told the police was Lou, right?
>
> A. Yes.
>
> Q. Did you ever tell the police that that person who shot Mell was in the bar every day?
>
> A. I didn't know if Lou was his name or not. I said, I don't know if that's his name. I never said, oh, yeah, Lou shot him. I said, I don't know if that's his name or not. I did not know his name was John. His girl, she was, like, his name is Jonathan who did it.

*Id.* at 121.

To the extent that appellant is complaining that hearsay was improperly admitted and counsel failed to object, we find that the girlfriend's information does not constitute hearsay. "Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' Pa.R.Evid. 801(c)." ***Commonwealth v. Parker***, 104 A.3d 17, 21 (Pa.Super. 2014). The alleged hearsay statement of appellant's girlfriend was not elicited to prove the truth of the matter asserted, that appellant shot the victim; rather, it was elicited by defense counsel to impeach Headen by implying that Headen was only able to identify the actual shooter based upon information supplied by appellant's girlfriend. Since there is no hearsay here, there was no basis for counsel to object and request a

mistrial. Consequently, there can be no finding of ineffectiveness. If anything, counsel was very much acting in appellant's best interest by attempting to impeach a key witness.

Appellant next argues that counsel was ineffective in failing to present a surveillance video taken from outside the bar at the time of the shooting. Prior to sentencing, appellant's post-trial counsel made a motion for extraordinary relief based upon either a **Brady** violation on the part of the Commonwealth for failing to reveal the video to the defense or ineffective assistance by trial counsel for failing to present the video at trial.[1] The trial court reviewed the video and denied the motion because the video was not of a nature that required the granting of a new trial. (Notes of testimony, 8/8/05 at 40.) In other words, the video was not exculpatory.

On appeal, appellant merely argues that because the video shows another white or Hispanic present on the street in the vicinity of the shooting, that would have supported the defense argument that someone other than appellant shot the victim. We reject this assertion. The mere presence of a third party at the crime scene in no way bolsters the defense theory, unless the video depicts the third party engaging in incriminating behavior such as arguing or fighting with the victim, or drawing the murder weapon. Appellant makes no argument that the video depicted anything more than the mere presence of a third party. We find no ineffectiveness on

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

the part of trial counsel in failing to present a video that was not exculpatory.

In his final argument, appellant complains that trial counsel was ineffective in failing to call his stepfather, Jose Louis Ortiz, as a witness at trial. Ortiz was called by the prosecution as a witness at trial. Ortiz testified that appellant and the victim were at the bar that night and that they quarreled. (Notes of testimony, 3/2/05 166-167.) Ortiz related that first the victim and then appellant went outside, and that as appellant passed by him, appellant "had his hands balled up" and told Ortiz "he's going to go take care of this." (***Id.*** at 166-168.) Ortiz stayed in the bar and then heard two or three shots. (***Id.*** at 161.) He then went outside and witnessed the victim get up and run across the street to his house. (***Id.***) Ortiz asked appellant what had happened and appellant said "nothing" and then ran. (***Id.*** at 161-162.) Ortiz's testimony was reluctant at first, but became more forthcoming when he was confronted with his statement to the police.

In an affidavit attached to one of the amended PCRA petitions, Ortiz claimed that he made his statement to police under police coercion. He claimed that the police threatened to hold him as a participant in the homicide unless he made a statement. Ortiz also noted his criminal record and his fear of losing his job. Ortiz further stated that he does not know if appellant was in the bar that night and did not see anyone leaving the bar. Finally, Ortiz stated that trial counsel never tried to speak to him about his

testimony, but that if he had attempted to speak to him, Ortiz would have told him about the police coercion.

> To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the appellant must show: (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced the appellant.

*Commonwealth v. Meadows*, 787 A.2d 312, 320 (Pa. 2001).

Appellant's claim is specious. First, appellant cannot satisfy the third prong above because there is no assertion that counsel was informed that Ortiz had favorable testimony regarding police coercion; rather, the assertion is that counsel neglected to ask. However, the above test imposes a duty on appellant and/or the witness to come forward and inform counsel. There was no reason for counsel to suspect that Ortiz's statement had been coerced.

Second, even if we assume that Ortiz's affidavit is true, then appellant cannot satisfy the fourth prong above because at the time of trial, Ortiz was clearly not prepared to cooperate with appellant, even if it was only to serve his self-interest to avoid being charged himself.

Third, Ortiz was more than a mere witness in this trial. Ortiz contacted trial counsel to help turn his son in and then retained counsel on his son's behalf. (Notes of testimony, 3/2/05 at 164.) It is simply

preposterous that Ortiz would have such an intimate relationship with trial counsel and not reveal to counsel at the time that the police had coerced a statement from him.  There is no merit here.

Accordingly, having found no merit in any of the issues raised on appeal, we will affirm the order below.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2015