J-S19011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAFAEL SAEZ | : | |
| | : | |
| Appellant | : | No. 1440 MDA 2022 |

Appeal from the PCRA Order Entered September 6, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005489-2017

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED SEPTEMBER 07, 2023**

Appellant, Rafael Saez, appeals from the post-conviction court's
September 6, 2022 order denying his timely-filed petition under the Post
Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant argues that
his trial counsel rendered ineffective assistance of counsel for not calling a
certain witness to the stand at trial.  After careful review, we affirm.

The PCRA court provided a detailed summary of the facts underlying
Appellant's convictions, the procedural history of his case, and the basis for
his present claim of trial counsel's ineffectiveness, as follows:

> On June 27, 2018, following a three-day jury trial, [Appellant] was
> convicted of one count of involuntary deviate sexual intercourse
> with a child less than thirteen years of age, two counts of indecent
> assault of a child less than thirteen years of age, one count of
> attempt to commit indecent assault of a child less than thirteen
> years of age, one count of corruption of a minor, one count of
> unlawful contact with a minor, one count of endangering welfare
> of children, and one count of indecent exposure.  The events
> underlying these convictions arose from [Appellant's] repeated

sexual abuse of his minor stepdaughter when she was between the ages of approximately eight and twelve years of [age].

The following facts regarding [Appellant's] abuse of his stepdaughter were established at trial:

> In 2013, [Appellant] moved into his girlfriend's home, where she lived with her daughter, J.C., and five sons. J.C. was nine years old when she first remembered her "step-dad touch[ing her] in a wrong way." (Trial Testimony [(N.T. Trial)], [6/25/18], at 69). At that time her room was on the second floor of the house, though two years later[,] she moved up to an attic bedroom. During trial, she testified that the assaults "started in the middle room, and then … came to the attic." (*Id.* at 71). [Appellant] groped her "chest" and "where [she] use[s] the bathroom" in the room on the middle floor, in her attic bedroom, in the kitchen while she was cooking, and once in the living room. (*Id.* at 71, 75, 79). [Appellant] would approach J.C. during times when her mother was not home, when she was "at work or out shopping," after sending the boys outside or upstairs. (*Id.* at 79). He repeatedly came to her attic bedroom when she was alone, took off her underwear, forced her to masturbate him, engaged in oral intercourse with her, and vaginally raped her. (*Id.* at 72-80). At age thirteen, J.C. found the courage to tell her grandmother, Luz Alvarez, about the abuse. Ms. Alvarez reported the abuse to the police and an investigation began.

(Trial Court Opinion, [3/22/19], at 1-2).

Following the trial and verdict, [the court] sentenced [Appellant] on October 5, 2018, to an aggregate period of 16 to 32 years['] incarceration. [Appellant] thereafter filed a timely direct appeal to the Superior Court. The Superior Court affirmed [Appellant's] judgment of sentence on December 20, 2019. [*See Commonwealth v. Saez*, 225 A.3d 169 (Pa. Super. 2019).] On January 21, 2020, [Appellant] filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on May 27, 2020. [*See Commonwealth v. Saez*, 234 A.3d 407 (Pa. 2020). Appellant] did not seek review by the United States Supreme Court.

On August 18, 2020, [Appellant] filed a *pro se* [PCRA] petition…. … Attorney Daniel C. Bardo was appointed to represent [Appellant]. Attorney Bardo filed an amended [PCRA] petition …

on [Appellant]'s behalf on September 24, 2021. In his amended petition, [Appellant] argued that his trial counsel, Daniel Straszynski, Esquire, was ineffective for failing to call a witness, P.M., during trial. On October 12, 2021, [the court] entered an order scheduling a hearing on [Appellant's petition].

At the January 24, 2022[] hearing, Attorney Straszynski testified that he learned of a potential witness, P.M., during trial preparation when the Assistant District Attorney forwarded police reports from interviews that detectives had conducted with P.M. and her mother. (Notes of Testimony, Post-Conviction Relief Act Hearing [(N.T. Hearing], [12/29/21], at 7-8…. After receiving information about P.M., Attorney Straszynski sent his own investigator to interview both P.M. and her mother. ([*Id.*] at 8). Attorney Straszynski testified that P.M.'s mother made it clear to the investigator that she did not want her daughter to be involved in the trial and that if Attorney Straszynski did get P.M. involved, "it would not be good for [Appellant]." ([*Id.*]). P.M.'s mother did allow the investigator to speak with P.M., who told the investigator that she had a conversation with the victim where the victim stated that [Appellant] did not do what she had accused him of doing—that her accusations were fabricated. ([*Id.*] at 8-10).

Attorney Straszynski testified that he ultimately made the decision not to call P.M. as a witness at trial. ([*Id.*] at 11). He explained:

> Prior to trial, I had made the decision not to call [P.M.] as a witness, for essentially, two reasons. One is, essentially, her family didn't want her involved and had indicated at least twice to our investigator that if we did call her, that it would not be good [for Appellant].
>
> And then, number two, it was relayed to me by [the] Assistant District Attorney … that if I did call [P.M.] as a witness, she would call [P.M.'s mother] as a witness to offer a prior consistent statement about a conversation that she had with the victim where the victim told her that [Appellant] had been abusing her since she was 8 years old[,] a specific conversation that, I think, happened during a car ride, if I remember correctly.

([*Id.*] at 11-12). Attorney Straszynski stated that although he subpoenaed P.M. and she appeared on the first day of trial, he did not want "the jury to hear that [the victim] had made another disclosure to a family member, and [he] considered that the jury

would consider [P.M.'s] mother's testimony about that to be more credible than the testimony from [P.M.]." ([*Id.*] at 13).

Attorney Bardo pushed back against Attorney Straszynski's testimony by referencing a discussion that occurred during an in-chambers meeting on the second afternoon of trial, before the Commonwealth concluded its case-in-chief but after the victim had already testified. During the discussion, Attorney Straszynski requested permission to call P.M. for impeachment purposes pursuant to [Pa.R.E.] 813(b). Attorney Straszynski acknowledged that he had not laid the proper foundation because he had not confronted the victim with P.M's statement while the victim was on the stand. ([N.T. Trial], [6/26/18], at 241-42). However, Attorney Straszynski sought to call P.M. regardless of his "oversight" and "lack of vigilance" during his cross-examination of the [v]ictim. ([*Id.*]). [The court] denied Attorney Straszynski's request. ([*Id.* at 244]).

During the PCRA hearing, Attorney Straszynski acknowledged that he could have fixed his error by recalling the victim during his own case-in-chief. (N.T. [Hearing] at 15-16). Attorney Straszynski explained that he chose not to take this step and decided not to call P.M. for tactical reasons—he thought it was too risky. ([*Id.*] at 17). Attorney Straszynski testified that in addition to the Commonwealth's threat to call P.M.'s mother during its case-in-chief, he feared that if he called P.M., she would be hostile and that she might bring up something that she had not disclosed to his investigators. ([*Id.*] at 18).

Following the PCRA hearing and after considering briefing submitted by both [Appellant] and the Commonwealth, [the court] ultimately denied [Appellant's] request for post-conviction relief on September 6, 2022. On October 6, 2022, [Appellant] filed a notice of appeal to the Superior Court. He filed a [Pa.R.A.P. 1925(b)] concise statement on October 19, 2022, and the Commonwealth responded on October 24, 2022.

PCRA Court Opinion (PCO), 12/6/22, at 1-5 (footnote and unnecessary capitalization omitted). The PCRA court filed its opinion on December 6, 2022.

Herein, Appellant states one issue for our review: "Did the [PCRA] court err when it denied relief on [Appellant's] ineffectiveness claim when the record

showed that trial counsel failed to call a known witness who would have testified that the victim admitted that she fabricated the allegations against [Appellant]?" Appellant's Brief at 4.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

In this case, Appellant argues that Attorney Straszynski was ineffective for failing to call P.M. to the stand, as P.M. would have testified that the victim admitted she fabricated the allegations against Appellant. Appellant challenges the PCRA court's conclusion that Attorney Straszynski expressed a reasonable basis for deciding not to call P.M., and that Appellant failed to establish he was prejudiced by counsel's decision. First, in determining that Attorney Straszynski's decision not to call P.M. was reasonable, the PCRA court explained:

"A failure to call a witness is not *per se* ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy." [*Commonwealth v.*] *Sneed*, 4[5] A.3d [1096,] 1109 [(Pa. 2012).] Attorney Straszynski's PCRA hearing testimony showed that his ultimate decision not to take the steps necessary to call P.M. was tactical. Attorney Straszynski explained that although he did fail to lay the evidentiary foundation required to introduce P.M.'s testimony, he ultimately decided not to take the remedial action necessary to call P.M. because he made a strategic decision that the jury would consider P.M.'s mother's testimony to be more credible than the testimony from P.M.

- 6 -

PCO at 8 (unnecessary capitalization and some brackets omitted). Second, in concluding that Appellant did not demonstrate he was prejudiced by counsel's decision not to call P.M., the PCRA court reasoned:

> First, [Appellant] failed to call P.M. as a witness at the PCRA hearing, making it almost impossible to discern what her actual testimony would have been at trial and whether Attorney Straszynski's decision not to call her prejudiced [Appellant]. ***Compare Commonwealth v. Matias***, 63 A.3d 807, 812 (Pa. Super. 2013) (upholding the PCRA [c]ourt's decision that counsel was ineffective for failure to call a witness where the witness testified at the PCRA hearing and directly contradicted testimony offered by [an]other witnesses at trial).
>
> Second, at the PCRA [h]earing, Attorney Straszynski testified that P.M.'s mother made it clear that if Attorney Straszynski got P.M, involved in the trial, it would not go well for [Appellant]. Attorney Straszynski also testified that it was relayed to him by the Commonwealth that if he did call P.M. as a witness, the Commonwealth would call P.M.'s mother as a witness to offer a prior statement about a conversation that she had with the victim. In fact, on the morning of June 26, 2018, prior to closing its case-in chief, the Commonwealth filed an "Amended Petition to Admit Out-of-Court Statements Under the 'Tender Years Hearsay Exception'" in which the Commonwealth sought to introduce the statement that the victim allegedly made to P.M.'s mother. The Commonwealth outlined the nature of the statement, noting that the victim told P.M.'s mother that the abuse started when she was eight years old and that the victim was crying at the time she made the statement. On the final day of trial, June 27, 2018, [the court] noted on the record that [it] had denied the Commonwealth's Petition because [it] had also denied Attorney Straszynski's request to call P.M. under Rule 613(b). ([N.T.] Trial, [6/27/18], at 266-67). Thus, if Attorney Straszynski had decided to call P.M., the Commonwealth had taken all the procedural steps necessary to call P.M.'s mother during its case-in-chief.

***Id.*** at 8-9.

We agree with the court's conclusion that Appellant has failed to demonstrate he was prejudiced by the omission of P.M.'s testimony.[1] We are unconvinced by Appellant's argument challenging the court's decision, in which he avers:

> The victim's admission to her friend that she fabricated the allegations was credible and valuable to the defense. She told her friend that "[Appellant] didn't do what [I] accused him of doing. It was fabricated[.]" N.T. [Hearing] … at 10. The respective investigations from both sides confirmed the statement. [*Id.*] at 8-10 (the Commonwealth disclosed that the victim made the statement and the public defender's investigator confirmed the same). It certainly stands to reason that a victim would confess that she fabricated allegations to a friend but not family members, the police, or the prosecutor. The admission that the victim fabricated the allegations would have bolstered the defense argument that the jury should not believe the victim. This would have come in addition to the inconsistencies trial counsel had already pointed out to the jury. The jury's verdict is, therefore, in question.
>
> The admission of the victim's confession that she fabricated the allegations would not have hurt [Appellant's] case. As discussed above, the prosecutor had already admitted several consistent statements. The threat that [a] witness—or more properly the witness's family—would be less-than cooperative is nothing more than the reality of trying criminal cases. It is unrealistic to expect that the admission of the victim's inconsistent statement would have left [Appellant] worse off under either of these theories.
>
> The outcome is in question. The jury would have heard additional evidence negatively affecting the victim's credibility. If the jury believed that the victim was lying, the result of the trial would likely have been different.

_____

[1] Accordingly, we need not address the court's determination that counsel also expressed a reasonable basis for not calling P.M. to the stand. ***See Franklin***, 990 A.2d at 797 ("The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs.").

Appellant's Brief at 20-21.

Initially, Appellant's argument is wholly premised on an assumption that P.M.'s testimony would have aligned with her out-of-court statements to investigators. However, because Appellant failed to call P.M. to the stand at the PCRA hearing, this assumption is impossible to verify. As the Commonwealth points out, Appellant's

> decision not to call P.M. as a witness at the PCRA hearing is particularly noteworthy and telling given [Attorney Straszynski's] testimony that he ultimately decided not to call P.M. as a witness at trial because he believed the risks associated with calling her outweighed any potential benefit. While trial counsel testified that he had no reason to believe P.M.'s testimony concerning that conversation would not have been consistent with her prior statement, he also noted that P.M.'s mother … had warned/threatened him that calling P.M. to testify would not be good for [Appellant] and that he was concerned about the possibility of P.M.['s] disclosing something on the stand that she had not disclosed to the investigator. Trial counsel's stated concerns are not unfounded[,] as he acknowledged at the PCRA hearing that P.M. and her family were close friends with the victim and her family and that the investigator for the defense had only questioned P.M. about the one specific conversation. As such, [Appellant] failed to meet his burden of demonstrating that P.M. was willing to testify in favor of the defense[,] and that the absence of her testimony was so prejudicial as to have denied [Appellant] a fair trial.

Commonwealth's Brief at 11 (footnotes omitted).

We agree. Without P.M.'s testimony at the PCRA hearing, we cannot conclude that she would have testified consistently with her exculpatory, out-of-court statements. We also cannot be certain that she would not have added other information that could have been harmful to Appellant's defense.

Therefore, Appellant has failed to prove that the absence of P.M.'s testimony caused him prejudice.

Alternatively, we agree with the Commonwealth that Appellant also failed to prove prejudice for several additional reasons. The Commonwealth explains:

> Offering the testimony of P.M. would have opened the door to other highly prejudicial evidence. In addition to inviting the prior out-of-court statements [the victim made to P.M.'s mother], … P.M.'s testimony would have arguably opened the door to reconsideration of the order precluding evidence of [Appellant's] 2001 adjudication for rape and incest involving his then twelve-year-old sister, whom he impregnated. The Commonwealth had previously sought to introduce this evidence through the testimony of [Appellant's] sister pursuant to [Pa.R.E.] 404(b)(2), arguing that [Appellant's] prior rape of his sister was strikingly similar to the current offenses, highly probative[,] and demonstrated a common plan, scheme or design. While the Commonwealth was ultimately precluded from doing so, based solely on the relative remoteness of the prior offenses, it was specifically noted during the proceedings that a Rule 404(b) analysis includes consideration of the Commonwealth's need for the evidence, including to rebut attacks on credibility and claims of fabrication. *See*[] ***Commonwealth v. Luktisch***, … 680 A.2d 877[, 879] (Pa. Super. 1996) (holding that the Commonwealth's need to present prior bad acts testimony increased after victim's credibility was "crippled" at trial). In fact, the defense acknowledged the possibility that the evidence may be appropriate rebuttal evidence[,] and the [c]ourt included a qualification in its order precluding the evidence, noting that it was not precluding "the possible use of such evidence in rebuttal if deemed to be relevant." [Order, 4/25/18, at 1 (single page).] Offering the testimony of P.M. would have warranted reopening the issue, as was specifically anticipated, and likely would have tipped the scale in favor of admitting the evidence to rebut the direct attack on the victim's credibility and charge of fabrication. Because P.M.'s testimony could have opened the door to this

- 10 -

other[,[2]] highly prejudicial evidence, [Appellant] did not suffer any actual prejudice as a result of trial counsel's decision to not call P.M. to testify.

Furthermore, given this record, P.M.'s testimony would have been unlikely to change the jury's credibility determinations or the outcome of the proceedings. The jury was presented with voluminous testimony and evidence that the victim had made prior inconsistent statements. In fact, it was specifically noted that during her forensic interviews the victim unequivocally denied having touched [Appellant's] penis[,] despite testifying to doing so at trial. The jury also observed the victim during her first forensic interview outright deny several of the allegations against [Appellant], including [Appellant's] having touched her with anything but his hands[,] and [Appellant's] having touched her under her clothes or on the inside of her vagina. During both … the forensic interviews, the jury observed the victim['s] claiming to not know or [be able to] recall details and events that she reported to others and/or testified to at trial. Despite being presented with these inconsistent statements and prior outright denials, the jury found the victim credible and returned a verdict of guilt.

The record also contains overwhelming testimony and evidence concerning the victim's reluctance, and at times outright refusal, to disclose the sexual abuse to others. The victim repeatedly expressed feeling ashamed, scared[,] and a desire to not have people know that she was sexually abuse[d]. She testified that she never told any of her friends about the abuse and still had not disclosed the extent of it to even her mother. Throughout the forensic interviews[,] she can be observed avoiding talking about the abuse by denying the abuse occurred, claiming to not know or recall things and, at times, simply refusing to respond. Consistent with the arguments of the defense at trial, the only disclosures the victim ever made, notably with the exception of [P.M.'s mother], were to adults that pressured her into disclosing. P.M.'s statement that on one occasion the victim had denied that the abuse occurred is entirely consistent with and cumulative of other testimony and evidence offered at trial and merely demonstrates

_____

[2] Here, the Commonwealth notes that "the [c]ourt permitted the Commonwealth to introduce, for purposes of showing a common plan or scheme, evidence that [Appellant] sexually abused his six-year-old biological daughter." Commonwealth's Brief at 18 n.38 (citations to the record omitted).

- 11 -

a young child feeling ashamed, scared[,] and reluctant to have others, particularly friends/peers, know that she was sexually abused by a trusted adult father figure. Given the circumstances in this particular case, it is unlikely that P.M.'s testimony would have changed the outcome of the proceedings.

*Id.* at 16-20 (footnotes omitted).

After thoroughly reviewing the record in this case, we agree with the Commonwealth's arguments that Appellant was not prejudiced by the omission of P.M.'s testimony and, indeed, her testimony could have potentially harmed his defense by opening the door to other, damaging evidence. Thus, the PCRA court did not err in concluding that Appellant failed to prove he was prejudiced by Attorney Straszynski's decision not to call P.M. at trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/07/2023

- 12 -